No. 84-297

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

WILLIAM H. DERRENGER,

       Plaintiff and Appellant,

-vs-

CITY OF BILLINGS, a Municipal Corp.,

       Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Jay F. Lansing, Billings, Montana

    For Respondent:

        James L. Tillotson, Billings, Montana

Submitted on Briefs: Sept. 24, 1984

Decided: December 6, 1984

Filed: DEC - 1984

_Ethel M. Harrison_
Clerk

Mr. Justice Frank B. Morrison delivered the opinion of the Court.

This is an appeal from a summary judgment granted to the City of Billings by the District Court of the Thirteenth Judicial District, of Yellowstone County. We reverse and remand.

William H. Derrenger, filed a complaint for a declaratory judgment against the City of Billings on September 9, 1983, requesting the district court to construe and interpret the written annexation agreement entered into with the City of Billings. Both parties filed a motion for summary judgment. The judgment entered April 12, 1984 denied Derrenger's motion and granted a summary judgment in favor of the City of Billings.

Derrenger found that certain facts relied upon by the district court were clearly erroneous and filed a motion to amend the findings, conclusions and judgment. On June 22, 1984, the district court amended its findings but refused to amend its earlier judgment. Derrenger appeals both judgments.

In 1976 William H. Derrenger purchased a parcel of land in the Billings area which comprised three tracts, Certificates of Survey No. 334, No. 1566 and No. 1610. At the time of this action, Tract No. 334 was a part of the City of Billings and designated Residential-9600, a zone classification restricting use of the property to single-family residences. The remaining two tracts were zoned Agriculture Open Space under Yellowstone County zoning regulations.

In 1978 the City of Billings expressed an interest in annexing Certificates of Survey No. 1566 and No. 1610. On August 28, 1978, the Salsburys, legal titleholders and sellers to Derrenger, and the City of Billings entered into a

2

written agreement entitled "Waiver of Right to Protest Annexation and Agreement on Non-conforming Use," which is the subject of this appeal. The Agreement was approved by the City Council of Billings and signed by the mayor. Tracts No. 1566 and No. 1610 were annexed on November 27, 1978, and rezoned R-96 on December 11, 1978.

In 1983, Derrenger proposed to build a multi-family residential unit on his property, all portions of which were then zoned R-96. A controversy arose as to the construction of the 1978 annexation agreement and its effect upon the proposed multi-family residential use. Derrenger filed a complaint on September 9, 1983, for a declaratory judgment, requesting judicial construction of the annexation agreement to permit multi-family residential development on his property. Both the City and Derrenger believed the language of their agreement was unambiguous and supportive of their individual contentions and moved the district court for a summary judgment. In the judgment entered April 12, 1984, the trial court denied Derrenger's summary judgment and granted the summary judgment in favor of the City. Derrenger appeals and presents the following issues:

1. Whether the district court erred in interpreting the language of the agreement, "Residential Purposes", to be only a single-family residential use in conformance with existing zoning on the property.

2. Whether the district court erred in failing to give effect to the language of the agreement contained in paragraph 1(d), page 2, in its interpretation and construction of the pertinent language of the agreement.

3. Whether the district court erred in limiting the effect of the agreement to only those non-conforming uses which existed prior to or at the time of the agreement.

3

Pertinent language of the August 28, 1979, annexation agreement describing accepted non-conforming uses, provides as follows:

"WHEREFORE, on the basis of the above premises, the Owners agree to be annexed into the City of Billings and to waive any rights to protest said annexation upon the following conditions; and the City of Billings in consideration thereof agrees to said conditions:

"1.    That simultaneously with the annexation the following non-conforming use as to the above tracts be established, adopted, and recognized by the City of Billings:

"(a)   That the tracts, buildings, modification thereof, and future buildings may be used for residential purposes, for parking, and the purpose of receiving, storing, growing if applicable, processing, and selling produce, fruit, vegetables, nuts, grain and grain products which are dried, fresh or otherwise, lawn and garden items and parts thereof, flowers, trees, shrubs, seeds, and nursery stock, lawn ornaments, lawn furniture and gift items and specialty retail items, Christmas trees and ornaments and other holiday decorative items, and all related items;

"(b)   That the buildings and structures upon these tracts may be modified, enlarged, and repaired, and if destroyed in whole or part, rebuilt; and if need be, additional buildings and structures may be built upon this tract at the discretion of the Owners or future owners of the tract to accommodate the above-specified uses;"    (emphasis added)

In a memorandum accompanying the order of March 29, 1983, the trial court found that the subject agreement was clear on its face and said:

".  .  . A review of the agreement leads the Court to the Conclusion that the agreement is legal, in that it does not constitute contract zoning, and that it is not ambiguous.  It speaks for itself, but from a consideration of the terms it contains, it speaks a different message than that contended for by plaintiff."

The district court then interpreted the language of the agreement and imposed a limitation on the terms as follows:

"It is apparent that the agreement is a recognition by the parties that, at the time of its execution, there were several uses being made of the premises which were non-conforming.  The document was merely an agreement by the City to recognize and to allow the continuation of these already-established

4

non-conforming uses and to provide a specific description of what those uses were.

". . .

"At the time the agreement was entered into, and at all times prior thereto, the only residential use made or being made of the premises was a single-family residence. See, Salsbury affidavit, Exhibit 'A' to Document No. 11. Therefore, since the agreement was only a recognition of the then non-conforming uses, and no non-conforming multi-family residential use was in effect, the only residential use which it allows is a conforming one, to-wit: Single-family dwellings."

If the agreement is ambiguous, then summary judgment is not proper and the question of intention should be submitted to the jury. Schell v. Peters (1966), 147 Mont. 21, 410 P.2d 152, 155. The issue reduced to simplest terms is whether "residential purposes" is so clear on its face as to preclude multi-family residential purposes. We think not.

The Supreme Court of Ohio had occasion to make a similar interpretation in Hunt v. Held (1914), 107 NE 765. There the issue was whether multi-family use violated a restriction for "residence purposes only." The Court, in deciding against the more restrictive use, said:

"[3] But is there any doubt as to the meaning of the words? The word 'residence,' as we view it, is equivalent to 'residential' and was used in contradistinction to 'business.' If a building is used as a place of abode and no business carried on, it would be used for residence purposes only whether occupied by one family or a number of families. Counsel say that the words were intended to describe a type of building. We think not. The word 'residence' has reference to the use or mode of occupancy to which the building may be put. If it had been intended that the building was to be for the use of one family only, words indicating such an intention would have been used, as is frequently done, such as 'a single residence,' 'a private residence,' 'a single dwelling house.'"

Under the authority of the Ohio case, we could hold that "residential use" clearly allows for multi-family. However,

after carefully reviewing the record in this case, we are convinced that there is a genuine factual controversy over what the parties intended by use of the subject language.

The agreement on non-conforming use is confusing. At one point, the agreement recites that the three tracts in question were zoned R-9600, a residential classification for single-family. In fact, only one tract was so zoned. The trial court reasoned that since the parties to the agreement believed all three tracts were limited to single-family and existing non-conforming uses, and since zoning limitations could not be changed by contract, then surely the itemized uses must have contemplated only existing uses. Perhaps that is true. But again, there is a fact question about what was intended. The parties may have intended to assure additional future uses in return for agreeing to annexation. They may not have fully understood the limitations on contract zoning. Surely, they must have intended to receive some consideration for not protesting annexation. These questions must be resolved by the trier of fact.

The trial court also must have found the agreement unclear on its face. After examining intent and going out-side the four corners of the instrument by referencing an affidavit, the court said: "The intent of the parties when the agreement is entered into is controlling."

Intent is only looked to when the agreement is not clear on its face. The court may have properly concluded the intent issue but that issue is one of fact and cannot be decided on summary judgment.

We, therefore, vacate the judgment and remand for trial.

Justice

6

We concur:

_____
Chief Justice

_____

_____
Justices

7

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

The agreement is question was titled "Waiver of Right to Protest Annexation and Agreement on Non Conforming Use," and contained the following language, in addition to that set forth in the majority opinion:

> "WHEREAS, the area immediately surrounding the above-described tracts and the tracts themselves are zoned R6900, a residential zoning classification;
>
> "WHEREAS, the above described tracts have historically and are currently being used for an agricultural use;
>
> "WHEREAS, the use now being made of the above-described tracts is a non-conforming use;
>
> "WHEREAS, the City of Billings is desirous of annexing said tracts on the conditions stated; and
>
> "WHEREAS, the Owners of said tracts are willing to waive any rights to protest said annexation on condition of obtaining a more certain land use classification." (Emphasis added.)

Section 28-3-201, MCA, provides as follows:

> "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties. (Emphasis added.)

The parcel of land contained in Certificate of Survey No. 334, located within the City of Billings and having been zoned R-9600 long before the date of the agreement, but bearing a non-residential non-conforming use could not legally be the subject of an agreement whereby the City would agree to grant a residential multi-family use variance. Such an agreement, in my view, would constitute contract zoning.

8

In 82 Am.Jur.2d, Zoning and Planning, Section 17, the aversion to "contract zoning" is explained:

> "When zoning power is delegated to a municipality, it is not contemplated that the municipality will bargain away any part of that power to any private landowner. A contract made by the zoning authorities to zone or rezone for the benefit of a private landowner is illegal and is denounced by the courts as 'contract zoning' and as an ultra vires bargaining away of the police power. It is reasoned that zoning restrictions and permissions must be governed solely by the public interest, and not by the benefit to an individual applicant." (Emphasis added.)

The agreement itself recognizes the status and zoning of the land described in Certificate of Survey No. 334. The City of Billings had police power over that specific parcel and could not bargain such power away for the benefit of a private landowner.

It is for that reason that I believe the majority to be in error when they state: "The parties may have intended to assure additional future uses in return for agreeing to annexation." In my view, such an additional future residential use would constitute illegal contract zoning.

I also believe the majority to be in error when they state: "Surely, they must have intended to receive some consideration for not protesting annexation. These questions must be resolved by the trier of fact." The plaintiff clearly received something he had not had prior to the agreement, specifically:

(a) a written agreement that the non-conforming commercial uses on parcel 334, zoned single family residential, could continue and in fact be expanded within specified limits;

(b) a written agreement that these same non-conforming uses would be granted for the remaining two tracts after annexation; and

(c) a written agreement that the plaintiff would have a discontinuance of use period of three years, rather than the normal one year period.

District Judge Luedke recognized that interpreting the agreement as requested by the plaintiff would render the agreement illegal by stating in his memorandum:

> "However, the overriding message which the terms of the agreement contains, when all term are considered together, is that the then-existing non-conforming uses were to be protected. The totality of such agreement does not support the position of plaintiff that use of the language, 'residential uses,' authorizes the establishment of new or different non-conforming uses. If it did, there would be a problem with respect to the defense of the City as to contract zoning."

District Judge Luedke interpreted the agreement as referring to non-conforming uses which existed at the time the agreement was executed, the only interpretation which could make the agreement lawful as required by section 28-3-201, MCA.

Finally, the majority opinion suggests that the trial court went outside the agreement when the trial court stated: "The intent of the parties when the agreement is entered into is controlling."

That statement was actually made in the trial court's second memorandum explaining its later order granting the plaintiff's motion to amend findings to state that the other two parcels were in fact zoned agricultural open space on the date of the agreement, and denying plaintiff's motion to amend the judgment.

10

The pertinent portion of the trial court's second memorandum explaining that order is as follows:

> "Regardless of the actual zoning of the property on the date of the 1978 agreement, the parties to the agreement operated under the assumption that the tracts were zoned R-9600. The agreement makes this clear. The following statement appears on Page 1 of the agreement:
>
> "'WHEREAS, the area immediately surrounding the above-described tracts and the tracts themselves are zoned R-9600, a residential zoning classification[.]'
>
> "A reading of the agreement reveals that the parties were operating under the assumption that the uses listed in the agreement were at that time non-conforming ones. The tenor and purpose of the agreement is clear--the parties were attempting to insure that the uses then being made of the property would continue following annexation by the City. The fact that the parties mistakenly believed that the parcels were zoned R-9600 does not change the judgment of the Court. The intent of the parties when the agreement was entered into is controlling."

I would affirm the judgment of the trial judge.

K. C. Gullbrandson
Justice