NO.    94-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

MARK R. KLAWITTER and
SANDRA B. KLAWITTER,

  Plaintiffs and Respondents,

 v.

ETTA W. DETTMANN and
JEAN R. BLEKEN,

  Defendants and Appellants.

APPEAL FROM: District Court of the Sixth Judicial District,
      In and for the County of Park,
      The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

      Jack Yardley, Yardley and Yardley,
      Livingston, Montana

    Fox Respondent:

      William S. Dockins, Williams, Jent & Dockins,
      Bozeman, Montana

Submitted on Briefs: September 22, 1994

Decided: December 13, 1994

Filed:

FILED

DEC 13 1994

CLERK OF SUPREME COURT
STATE OF MONTANA

             Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Mark and Sandra Klawitter (Buyers) sued Etta Dettmann and Jean Bleken (Sellers) for specific performance of a real estate buy/sell agreement. The parties filed cross-motions for summary judgment. The Sixth Judicial District Court, Park County, granted the Buyers' motion and denied Sellers' motion. The District Court entered judgment decreeing specific performance in favor of Buyers. Sellers appeal. We affirm in part, reverse in part, and remand.

We frame the issues on appeal as follows:

1. Did the District Court err in determining that the May 3, 1993, agreement constituted a binding real estate buy/sell agreement?

2. Did the District Court err by construing the language of the inspection clause in the buy/sell agreement?

On May 3, 1993, Buyers and Sellers signed a standard realtor's buy/sell agreement. Sellers offered to sell and Buyers offered to buy a home and land located at 319 South 12th in Livingston for the sum of $125,000. Buyers requested that their purchase be conditioned upon an inspection of the home, including a radon gas test. Based on this request, Sellers' real estate agent added the following clause to the pre-printed agreement:

> 2) Offer is contingent upon purchasers having an inspection and radon gas test done at their expense within 10 days of acceptance of this Offer, purchaser to notify Aspen Real Estate within 3 days of receipt of inspection of acceptance in writing. If notice is not received it will be deemed acceptable.

This dispute arises primarily over the interpretation and application of this clause. Additionally, the agreement made the sale subject to Buyers' ability to obtain financing. Buyers applied for financing shortly after executing the May 3 agreement and paid a $750 application fee to the bank.

Buyers hired Donald H. Barrick of Castle Inspection Services of Bozeman to conduct a full inspection of the house for $250. The inspection took place on May 6, 1993, and included a radon test. Mr. Barrick prepared two separate reports: the first, dated May 7 regarding the house inspection, and the second, dated May 18 regarding the radon testing. Prior to May 13, Buyers were informed by telephone that the radon test results were satisfactory. The house inspection report, however, disclosed several items which caused the Buyers concern.

On May 13, 1993, Buyers sent Sellers a letter stating that the radon test contingency was removed and that five items of concern existed regarding the house:

II) As to the home inspection there are five items that need to be addressed and negotiated:

1) Roof: A qualified roofer to inspect and repair roof as needed to pass financing and give an estimate of how long he feels the roof will last.

2) Tree in front removed and rain gutter repaired.

3) Paint siding, window trim and house trim.

4) The garage must have 3/4" gypsum board as a fire wall and a solid core swing open door.

5) The electric updated with GFCI's installed.

> If these items are repaired at sellers['] cost these contingencies will be removed and the home accepted according to all information on the original agreement.

Buyers received no response and on May 18 sent a second letter to Sellers. Buyers reiterated that the house inspection caused them concern, especially because the problems could affect their ability to obtain financing. Buyers stated that "[w]e are still interested in purchasing the property at the agreed upon price if the bank appraiser finds the property satisfactory in its' [sic] present condition." The letter further stated:

> If, however, items must be improved, repaired or replaced to satisfy the banks' requirements for the property, then the bank will not grant a loan to us or any other potential buyer on the property in its' [sic] present condition. If this occurs, then the purchase price will be reduced by an amount agreed upon by both seller and buyer to cover the work required by the bank. Otherwise, the work will be completed by the seller as required prior to closing.

Sellers responded by letter on May 21, 1993. The letter stated that the original asking price of $135,000 had been reduced by $10,000 in the buy/sell agreement; that Sellers intended the $10,000 reduction to cover any repairs; and that Sellers would not make any repairs that may be requested by an appraiser to satisfy a loan unless the original asking price of $135,000 is restored. If Buyers were willing to pay the original asking price and postpone the date of possession to July 31, Sellers would agree to apply the additional $10,000 to the 5 items specified in the Buyers' May 13 letter.

By letter dated May 24, Buyers rejected Sellers' May 21 proposal and stated that they

> would like to proceed according to our original agreement to sell and purchase dated May 3, 1993.
>
> Upon written receipt of the appraisal we will let you know in writing if we can proceed with the purchase . . .

Sellers did not respond to Buyers' May 24 letter. Sometime after May 24, Sellers' real estate agents informed Buyers that the Sellers did not intend to sell the house and property to them. On July 6, Sellers' attorney informed Buyers' attorney in writing that the May 3 agreement was no longer in effect.

Our standard in reviewing a grant of summary judgment is the same as that initially utilized by the district court. Cooper v. Sisters of Charity (Mont. 1994), 875 P.2d 352, 353, 51 St. Rep. 484, 485. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

<u>ISSUE 1</u>

Did the District Court err in determining that the May 3, 1993, agreement constituted a binding real estate buy/sell agreement?

Sellers argued in District Court, and continue to argue on appeal, that the May 3 agreement is not an agreement for the sale of real estate; instead, they argue that that agreement was merely an offer to sell the property and that Buyers did not **timely** accept

5

the offer. Alternatively, Sellers argue that the agreement is an option contract.

In support of their option contract argument, Sellers cite Pollard v. City of Bozeman (1987), 228 Mont. 176, 180, 741 P.2d 776, 779, which states:

> An option to buy involves a contract wherein the owner agreed to give another the exclusive right to buy property at a fixed price within a specified time. The option is not a sale. It is not even an agreement for a sale. At best, it is but "a right of election in the party securing the same to exercise a privilege," and only when that privilege has been exercised by acceptance does it become a contract to sell. In other words, a contract of sale and purchase imposes upon the vendee an obligation to buy. An option confers a privilege or right to elect to buy, *but it does not impose any obligation to buy.*

(Underlining added; citations omitted.)

The District Court determined "[t]hat [the] parties entered a written contract for sale of defendant's home in Livingston on a standard Montana 'Agreement to Sell and Purchase' form prepared by the sellers['] realtor," and that "both sides are bound thereby . . . ." We agree.

Section 28-2-102, MCA, sets forth the essential elements of a contract:

    (1)  identifiable parties capable of contracting;
    (2)  their consent;
    (3)  a lawful object; and
    (4)  a sufficient cause or consideration.

Sellers' arguments that the May 3 agreement constitutes an offer or an option is unsupported by the agreement itself. The agreement contains the following statement, which appears at the very top of the document:

6

AGREEMENT TO SELL AND PURCHASE
(Including Earnest Money Receipt)

> This <u>contract</u> stipulates the terms of sale of this property. Read carefully before signing (including the information of reverse side). <u>This is a legally binding contract.</u> If not understood, seek competent service.

(Emphasis added.) The agreement identifies the parties. There is no dispute as to the parties' capability to enter into a contract. The parties' consent to the agreement is evidenced by their signatures on the document. The object of the agreement--the purchase and sale of real estate--is a lawful one and is supported by sufficient consideration. Because both parties voluntarily accepted the terms, the agreement is not an option contract nor is it a mere offer. The agreement is a binding contract to buy and sell.

In Cady v. Burton (1993), 257 Mont. 529, 537, 851 P.2d 1047, 1052, we held that

> [t]he primary purpose of a buy-sell agreement is a restriction of the seller's ability to market the property for a specified time in exchange for the buyer's payment of earnest money and promise to complete the sale.

As this Court determined in <u>Cady</u>, 851 P.2d at 1052, nothing in the instant record "suggests any other purpose for the buy-sell agreement[] at issue."

We conclude that because all four of the elements set forth in § 28-2-102, MCA, were present when both parties signed the May 3 agreement, the agreement constitutes a binding contract. We affirm the District Court as to this issue.

7

<u>ISSUE 2</u>

Did the District Court err by construing the language of the inspection clause in the buy/sell agreement?

In its explanatory comment to its order ruling on summary judgment, the District Court determined the following:

> Ample legal authorities for granting plaintiffs their requested relief are set forth in their briefs filed herein, and the court finds there are no genuine issues of material fact, bu<u>t only a difference in the parties construction or interpretation of the contract and various letters they sent to each other</u> . . . .

(Emphasis added.)

As a general rule, construction and interpretation of written agreements, including contracts, is a question of law for the court to decide. First Sec. Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152-53, 818 P.2d 384, 387. Likewise, it is a question of law whether ambiguity exists in a contract. Audit Services, Inc. v. Systad (1992), 252 Mont. 62, 65, 826 P.2d 543, 551. The intent of the parties to an agreement is only looked to when the agreement is not clear on its face. Bain v. Williams (1990), 245 Mont. 228, 232, 800 P.2d 693, 695; Derrenger v. City of Billings (1984), 213 Mont. 469, 475, 691 P.2d 1379, 1382.

Where the question of intent depends upon the construction of an unambiguous contract, the question is one for the court alone; however, where a contract term is ambiguous or obscure or uncertain of meaning, the interpretation of the language, and thus, the determination of the parties' real intent, is a matter to be left to the consideration of the jury. Section 28-3-301, MCA; Gray v.

8

City of Billings (1984), 213 Mont. 6, 10, 689 P.2d 268, 270.

Pursuant to § 28-3-306, MCA,

> (1) If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the **time** of making it, that the promisee understood it.
> (2) When the terms of an agreement have been intended in a different sense by different parties to it, that sense is to prevail against either party in which he supposed the other understood it; and when different constructions of a provision are otherwise equally proper, that is to be taken which is most favorable to the party in whose favor the provision was made.

In this case, the District Court found

> the inspection and radon clauses of the [buy\sell] agreement to obviously mean that if an inspection showed repairs were needed or recommended and plaintiffs as purchasers did not wish to make them, or if the radon test was not satisfactory, purchasers could terminate the contract. Such result is determined because buyers cannot unilaterally impose on sellers new terms or conditions of making repairs or doing something about an excessive radon reading.

We do not agree with the District Court that the meaning of the inspection and radon clause is obvious. The clause reads:

> 2) Offer is contingent upon purchasers having an inspection and radon gas test done at their expense within 10 days of acceptance of this Offer, purchaser to notify Aspen Real Estate within 3 days of receipt of inspection of acceptance in writing. If notice is not received it will be deemed acceptable.

We conclude that the poorly drafted language of the clause is uncertain. Because the clause "is ambiguous or obscure or uncertain of meaning, the interpretation of the language and, thus, the determination of the parties' real intent, is a matter to be left to consideration of the jury." Gray, 689 P.2d at 270; § 28-3-301, MCA. We, therefore, reverse the summary judgment and

9

remand this cause to the District Court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

Justice James C. Nelson dissenting.

I concur with the Court's discussion on Issue 1 and dissent from our discussion on Issue 2. I agree that the clause at issue is unartfully drafted. However, I also believe that the Buyers performed their obligations under a reasonable construction of the contract's inspection contingency language.

While we have determined that the language of the inspection clause is uncertain and ambiguous, we fail to acknowledge a qualifying legal rule that derives from the fact that, here, the Sellers drafted the contract, including the offending provision, and, thus, caused the uncertainty and ambiguity of which they now seek to take advantage. That rule provides that in cases of uncertainty in the contract language, that language should be most strongly interpreted against the party who caused the uncertainty to exist. Section 28-3-206, MCA. The cases upholding that principle are numerous, but see, for example: St. Paul Fire & Marine Ins. Co. v. Cumiskey (1983), 204 Mont. 350, 665 P.2d 223, and Shanahan v. Universal Tavern Corp. (1978), 179 Mont. 36, 585 P.2d 1314. That rule is especially appropriate where, as here, the party responsible for drafting the provision at issue seeks to interpret his or her language so as to defeat the contract. 17A. Am.Jur. 2d Contracts, § 348.

Applying those principles in the instant case where there are no material facts in dispute and the issue is simply one of interpreting contract language, leads to exactly the conclusion arrived at by the District Court.

Accordingly, I would affirm.

_____
Justice