NO. 94-308

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

RONALD W. JOHNSON, d/b/a
JOHNSON REALTY,'

      Plaintiff and Respondent,

  v.

JERRY NYHART, CLARAJO NYHART,
and NYHART RANCHES, INC.,

      Defendants and Appellants.

FILED

FEB 08 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Beaverhead,
                The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            J. Robert Planalp, Landoe, Brown
            Planalp & Braaksma, Bozeman, Montana

        For Respondent:

            W. Cecil Jones and Calvin J. Erb,
            Attorneys at Law, Dillon, Montana

Submitted on Briefs: November 17, 1994

Decided: February 8, 1995

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Respondent Ronald Johnson, doing business as Johnson Realty, brought suit in the Fifth Judicial District Court, Beaverhead County, to collect a real estate broker's commission from sellers. Johnson moved for summary judgment. The District Court granted the motion and entered judgment in favor of Johnson. Appellants Jerry Nyhart and Nyhart Ranches, Inc., appeal. We affirm in part and vacate the judgment as it pertains to Clarajo Nyhart.

We frame the issues on appeal as follows:

1. Did the District Court err in granting summary judgment?

2. Did the District Court err by awarding prejudgment interest to Johnson?

3. Did the District Court err by entering judgment against Clarajo Nyhart?

Ronald Johnson is a licensed real estate broker doing business as Johnson Realty in Dillon, Montana. In 1984, Jerry and Clarajo Nyhart owned and ranched land in Beaverhead and Deer Lodge Counties. In the spring of 1984, the Nyharts wanted to sell approximately 2000 acres of their land located in the Big Hole Valley. On May 29, 1984, Jerry and an agent of Johnson Realty executed a standard listing contract for the land, listing the selling price at $800,000, and stating that the terms of the sale would "be negotiated at time of sale." The agreement provided that the listing contract would expire on May 29, 1985. The listing contract also provided:

FOR VALUE RECEIVED, you and your agents are employed to find a buyer ready and willing to purchase or exchange the property described above at the price and terms noted or at such other price and terms as I/we accept. . In the event a written agreement is executed for the sale or exchange of said property, I/we agree to pay you in cash a commission equal to 6% of the selling price for your services in securing or procuring a purchaser.

Johnson obtained an offer to purchase the property from Keith Swenson. Johnson presented Swenson's offer to the Nyharts, and on June 29, 1984, Swenson, Jerry, and Clarajo signed an earnest money receipt and agreement to sell and purchase. The earnest money receipt and agreement provided in part:

The TOTAL PURCHASE PRICE is Seven hundred thousand dollars ($700,000) to be paid by Purchaser as follows:

Total of $70,000 at closing including $10,000 earnest money paid this date. Balance to be paid in escrow. Purchaser to have the right of unlimited prepayment on escrow and Travelers Real Estate loan. Seller will then receive $50,000 on January 1, 1985. Balance to be agreed upon at closing.

. . .

The date of closing is on or before July 30, 1984 or 30 days beyond this date shall be allowed for completion of financing.

The agreement also provided:

The Seller shall at his expense, furnish Purchaser an abstract of title to the above described property, certified to date, or a title insurance policy as evidenced by a title commitment in an amount equal to the purchase price, insuring title thereto vested in Purchaser, free and clear of all liens and encumbrances except Zoning ordinances, building and use restrictions, reservations in federal patents, beneficial utility easements of record, and mortgage to Travelers Insurance in amount of $550,000.

The scheduled closing did not occur on July 30. On November 19, 1984, pursuant to the agreement for sale and purchase, Leonard Pelullo, Swenson's assignee in interest, executed two promissory notes payable to the Nyharts on February 1, 1985, and July 1, 1994, in the amounts of $80,000 and $100,000, respectively. To secure the notes, Pelullo granted the Nyharts a mortgage on the 2000 acres. The promissory notes and the mortgage were subsequently recorded in Beaverhead County.

On December 19, 1984, the Nyharts' attorney, Max Hansen, sent a letter to the general manager of the Boise, Idaho, branch of Travelers Insurance Company. Hansen's letter stated in pertinent part:

> It was always our understanding that at the time of closing this transaction [between the Nyharts and Pelullo], the [mortgage] assumption papers would be signed by Mr. Pelullo and the only further obligation Mr. and Mrs. Nyhart would have to Travelers would be to make the payment on the remaining balance. . .
>
> Since the assumption papers are not available at this time, my clients are faced with a rather unfortunate chain of circumstances. If they do not close the transaction, default interest is going to continue to accrue on past due payments owing to Travelers. However, if they do close out the transaction and make the 1/1/84 payment together with default interest, Mr. Pelullo will be placed in possession of the property while we are tying up the loose ends of getting the assumption papers signed by Mr. Pelullo. I am rather uncomfortable with that situation to say the least. We have determined that my clients don't have any real choice in the matter and are going to close the transaction with an eye to getting the assumption papers signed by Mr. Pelullo just as soon as possible and hopefully having the whole matter resolved by February 1, 1985.

4

The Nyharts' attorney prepared a deed transferring title of the 2000 acres to Pelullo, and on December 21, the Nyharts signed the deed and delivered it to Pelullo. The deed was subsequently recorded in Beaverhead County. In addition to the two promissory notes, Pelullo paid the Nyharts $70,000. The remaining balance of the purchase price consisted of a mortgage held by Travelers in the amount of $550,000. Jerry claims that he and his attorney "were under the belief that Travelers Insurance Company would allow an assumption of the real estate mortgage." Following the transfer of title, however, difficulties arose between the Nyharts, Pelullo, and Travelers regarding Pelullo's assumption of the $550,000 mortgage.

On December 21, the Nyharts paid Johnson a commission of $11,967.27 out of the $70,000 they received from Pelullo. The Nyharts' attorney also prepared, and the Nyharts signed, a promissory note for the balance of the commission, payable to Johnson on or before February 1, 1985, in the amount of $30,032.73. The total amount paid and promised to Johnson equalled $42,000, or exactly six percent of the $700,000 selling price. Johnson was not present at the December 21 transaction, nor was he represented by counsel at that meeting. The note was not signed by Johnson, although Jerry claims that Johnson orally agreed to the terms of the note.

Following the transfer of title, Travelers refused to allow Pelullo to assume the $550,000 mortgage and brought suit to

foreclose. Additionally, Pelullo failed to make payment on the promissory note due February 1, 1985. Two separate sets of litigation followed, the first between the Nyharts and Pelullo, and the second between Travelers, the Nyharts, Pelullo, and Pintler Creek Range, Inc. Those cases were filed in the Fifth Judicial District Court, Beaverhead County, and the Third Judicial District Court, Deer Lodge County, respectively.

In April 1987, the Nyharts and Pelullo settled their litigation against one another. They entered into a written agreement mutually releasing and discharging each other from

> all manner of action and actions, cause or causes of action, suits, debts, dues, **sums** of money, notes, mortgages, accounts, reckonings, covenants, contracts, controversies, promises, damages, judgments, claims and demands whatsoever, in law or in equity . regarding either the Beaverhead litigation, or the Deer Lodge litigation, or the subject matter of anything set forth in said lawsuits.

The agreement was also signed by David Hellhake, president of Pintler Creek Range, Inc. According to the agreement, Pintler Creek Range, Inc., was the current owner of the "property previously deeded to PELULLO by the NYHARTS." The agreement provided that the Nyharts would receive the use of and income generated by the 2000 acres for a period of five years and that, during the five years, Pelullo would pay the property taxes. Pelullo also agreed to pay up to $1000 to improve the cabin located on the land. A third cause of action was instituted by the Nyharts and Pelullo against Travelers. The District Court in this case

presided over and took judicial notice of the proceedings in that case.

On December 11, 1987, the Second Judicial District Court, Silver Bow County, issued a decree dissolving Jerry and Clarajo's marriage. Pursuant to the property settlement agreement in the dissolution proceedings, Jerry released Clarajo from liability for all notes, obligations, and debts which were presently owed or incurred by Jerry "including, but not limited to, property taxes, mortgages, and the debt to Travelers Insurance Company."

Our standard of review on a grant or denial of summary judgment is identical to that of the district court. Klawitter v. Dettmann (Mont. 1994), 51 St. Rep. 1296, 1297. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Klawitter, 51 St. Rep. at 1297; Spain-Morrow Ranch, Inc. v. West (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32.

## ISSUE 1

Did the District Court err in granting summary judgment?

Jerry Nyhart signed a standard listing contract with Johnson Realty. The contract provides in pertinent part:

> FOR VALUE RECEIVED, you and your agents are employed to find a buyer ready and willing to purchase or exchange the property described above at the price and terms noted or at such other price and terms as I/we accept. . . . In the event a written agreement is executed for the sale or exchange of said property, I/we agree to pay you in cash a commission equal to 6% of the selling price for your services in securing or procuring a purchaser.

7

In its order granting summary judgment, the District Court, with regard to this provision, concluded that:

> The language in the agreement is clear and unambiguous. There were no qualifying conditions. Johnson was entitled to a broker's commission when he found a buyer, ready and willing to purchase.

Jerry provides three arguments in support of his assertion that the District Court improperly granted summary judgment: (1) The District Court improperly construed the standard listing contract; (2) the buy/sell agreement was a conditional contract and binding only upon the assumption of the mortgage; and (3) material facts existed that precluded summary judgment.

The crux of Jerry's first argument is that the District Court incorrectly concluded that Johnson was entitled to a broker's commission when he found a buyer ready and willing to purchase the land. According to Jerry, the standard listing contract required Johnson "to sell, make or effect a sale" and not "to merely find a purchaser." In support of his argument, Jerry points to the word "executed" as it appears in the paragraph regarding the commission. Citing Black's Law Dictionary and the Random House Dictionary of the English Language, he argues that "[t]he word 'executed' clearly means completed or carried into full effect" and that the agreement provides for the payment of a commission only "when the transaction is completed or carried into full effect."

Jerry's first argument fails for two reasons. First, the standard listing contract in this case did not require the transaction to be completed or carried into full effect. Secondly,

8

even if the contract did require the execution of a sale, the District Court correctly pointed out that a sale was, in fact, executed.

In Sayegusa v. Rogers (1993), 256 Mont. 269, 271, 846 P.2d 1005, 1006, we stated:

> It is well-established law in Montana that a broker's right to recover a commission is conditioned on the broker's ability to accomplish that which he or she undertook to do in the contract of employment.

See Diehl and Associates, Inc. v. Houtchens (1977), 173 Mont. 372, 377, 567 P.2d 930, 933; First Trust Co. of Montana v. McKenna (1980), 188 Mont. 534, 541, 614 P.2d 1027, 1031; Ehly v. Cady (1984), 212 Mont. 82, 101, 687 P.2d 687, 697.

The contract provision at issue in _Sayegusa_ provided:

> FOR VALUE RECEIVED, you and your agents are employed to find a buyer ready and willing to purchase or exchange the property described above at the price and terms noted or at such other price and terms as I/we accept. . . In the event I/we sell or exchange the property, or a written agreement is executed for the sale or exchange of the property during the term of this agreement, I/we agree to pay you in cash a commission equal to 10% of the selling price.

The _Sayegusa_ contract provision is virtually identical to the contract provision at issue in the instant case. In _Savesusa_, we affirmed the district court's conclusion that the language of the listing contract was clear and unambiguous that the broker was entitled to a commission when he found a ready and willing buyer. Likewise, we agree with the District Court in the instant case that the listing contract employed Johnson simply to find a buyer ready and willing to purchase the Nyhart property. Pursuant to the clear

9

and unambiguous language of the listing contract, Johnson became entitled to his commission when Pelullo, through Pelullo's agent, entered into a written contract to purchase the land.

Moreover, the record reveals that Johnson not only found a person who was ready and willing to purchase the land; the record reveals that Johnson located a person who, in fact, purchased the land. As the Nyharts' attorney wrote on December 19, 1984:

> We have determined that my clients don't have any real choice in the matter and are going to close the transaction with an eye to getting the assumption papers signed by Mr. Pelullo just as soon as possible and hopefully having the whole matter resolved by February 1, 1985.

Two days later, the Nyharts delivered a deed of conveyance to Pelullo, and Pelullo delivered to the Nyharts $70,000 and two promissory notes. The District Court correctly concluded that the December 21 transaction between the Nyharts and Pelullo constituted the sale and purchase of the 2000 acres.

Jerry further contends that, because Pelullo's assumption of the Travelers mortgage was a condition precedent to the sale, when Travelers did not permit the assumption, the sale was not completed and Johnson was not entitled to a commission. This argument fails, because a careful review of the listing contract reveals that no conditional language exists regarding the accrual of Johnson's commission. Nowhere in the standard listing contract is there any mention of the Travelers mortgage. We, therefore, agree with the District Court that, once Johnson found a buyer ready and willing

10

to purchase the land, there were no qualifying conditions placed upon his entitlement to a commission.

Finally Jerry contends that the buy/sell agreement was ambiguous and the question of the parties' intentions should have been submitted to the trier of fact. However, the intent of the parties to an agreement is only looked to when the agreement is not clear on its face. Klawitter, 51 St. Rep. at 1298; Bain v. Williams (1990), 245 Mont. 228, 232, 800 P.2d 693, 695; Derrenger v. City of Billings (1984), 213 Mont. 469, 475, 691 P.2d 1379, 1382.

As a general rule, construction and interpretation of written agreements, including contracts, is a question of law for the court to decide. Klawitter, 51 St. Rep. at 1298; First Sec. Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152-53, 818 P.2d 384, 387. Likewise, it is a question of law whether ambiguity exists in a contract. Klawitter, 51 St. Rep. at 1298; Audit Services, Inc. v. Systad (1992), 252 Mont. 62, 65, 826 P.2d 549, 551.

Where the question of intent depends upon the construction of an unambiguous contract, the question is one for the court alone. Klawitter, 51 St. Rep. at 1298; Gray v. City of Billings (1984), 213 Mont. 6, 10, 689 P.2d 268, 270. As we discussed above, the District Court correctly determined that "[t]he language in the agreement is clear and unambiguous." Johnson was entitled to a commission when he found a ready and willing buyer. We, therefore,

11

reject Jerry's argument that the parties' intentions constituted genuine issues of material fact.

We hold that the District Court properly granted summary judgment.

<u>ISSUE 2</u>

Did the District Court err by awarding prejudgment interest to Johnson?

The District Court entered judgment in this matter on April 14, 1994, and ordered in pertinent part as follows:

> That the Plaintiff, Ronald Johnson, recover from the Defendants, Jerry Nyhart, Clarajo Nyhart and Nyhart Ranch, Inc., the following:
>
> 1.   Principal in the amount of THIRTY THOUSAND THIRTY-TWO AND 73/100 DOLLARS ($30,032.73).
>
> 2.   Interest at the rate of six percent (6%) from December 22, 1984, through September 30, 1985 in the amount of ONE THOUSAND FOUR HUNDRED TWO AND 70/100 ($1,402.70).
>
> 3.   Interest at the rate of ten percent (10%) from October 1, 1985 through April 13, 1994, in the amount of TWENTY-FIVE THOUSAND AND SIX HUNDRED NINETEEN AND 99/100 ($25,619.99).
>
> 4.   Interest at the rate of ten percent (10%) from April 14, 1994, until the judgment is paid in full in the amount of $8.23 per diem.

Jerry objected to paragraph three of the judgment because it ordered payment of interest to Johnson prior to the date of entry of the judgment. According to Jerry, the promissory note that he and Clarajo executed on December 21 "reveals that the obligation was not to accrue interest." The promissory note provides in pertinent part as follows:

12

PROMISSORY NOTE

$30,032.73                              December 21, 1984
                                        Dillon, Montana

     FOR VALUE RECEIVED, we, JERRY NYHART AND CLARAJO
NYHART, husband and wife, of Twin Bridges, Montana,
promise to pay to RONALD W. JOHNSON d/b/a JOHNSON REALTY,
of Dillon, Montana, the sum of THIRTY THOUSAND THIRTY-TWO
& SEVENTY-THREE/100TH DOLLARS ($30,032.73) lawful money
of the United States of America, with interest thereon at
the rate of twelve and one-half percent (12½%) per annum
payable to the payee on or before February 1, 1985.

     IF DEFAULT shall be made in the payment due
hereunder . . the entire amount of said note, both
principal and interest, shall at once become immediately
due and payable.

          .         .

     THE MAKERS hereof are hereby granted the right to
pay all or any part of the unpaid principal and interest
on this note at any time after the date hereof.

          .    .    .
                         /s/ Jerry Nyhart
                         /s/ Clarajo Nyhart

The stricken language was crossed out in writing, and above or

beside each stricken portion, the initials "J.N." and "C N"

appear. Jerry contends that because he and Clarajo struck out and

initialed the language regarding the payment of interest from the

promissory note, interest on the note was not to accrue. Jerry,

however, cites no authority in support of his contention.

     Johnson, on the other hand, argues that: (1) the District

Court awarded interest pursuant to the standard listing contract,

the earnest money receipt and agreement to sell and purchase, and

§ 27-1-211, MCA, and not pursuant to the promissory note; and

(2) even if the District Court awarded interest based on the

13

promissory note, the Nyharts' unilaterally created and altered the promissory note without the written approval or consent of Johnson.

This Court's decision in Byrne v. Terry (1987), 228 Mont. 387, 741 P.2d 1341, is dispositive of this issue. Pursuant to § 27-1-211, MCA, we set forth three criteria under which prejudgment interest may be awarded: (1) the existence of an underlying monetary obligation; (2) the amount of the obligation is certain or capable of being made certain by calculation; and (3) the right to recover the obligation vests on a particular day. Byrne, 741 P.2d at 1343. All three of these criteria are met in the instant case: (1) the monetary obligation consists of the real estate commission owed to Johnson in the amount of $42,000; (2) the Nyharts paid Johnson $11,967.27 on December 21; therefore, the outstanding balance owed on the commission is $30,032.73; and (3) Johnson's right to recover the commission vested on December 21, 1984, the date that the deed to the 2000 acres was delivered to Pelullo.

Additionally, "[t]he fact that a claim is disputed does not make it uncertain and thus unable to support an award of prejudgment interest." Byrne, 741 P.2d at 1343. Jerry's various assertions, including the fact that he and Clarajo altered the promissory note, do not change our analysis under Bvme. "When the debtor knows of his debt and also knows when it is due, 'no demand is necessary to start the running of interest from the date the payment should have been made.'" Bvme, 741 P.2d at 1343 (citing

14

W.J. Lake & Co. v. Montana Horse Products Co. (1939), 109 Mont. 434, 443, 97 P.2d 590, 594). When the Nyharts transferred title to Pelullo on December 21, 1984, the provisions of § 27-1-211, MCA, were triggered. On that date, the Nyharts owed Johnson a commission equal to six percent of the selling price, or $42,000. The Nyharts paid only one-third of the total amount owed. No demand was required by Johnson to enforce the remaining obligation owed. Neither of the two exceptions provided in § 27-1-211, MCA, apply in this case, i.e., neither the force of law nor the acts of the creditor, Johnson, prevented the Nyharts from paying the full amount of the real estate commission. Furthermore, there is no evidence in the record supporting Jerry's assertion that Johnson agreed to either the creation or subsequent alteration of the promissory note.

We hold that the District Court correctly awarded prejudgment interest to Johnson.

ISSUE 3

Did the District Court err by entering judgment against Clarajo Nyhart?

The District Court's April 14, 1994, judgment states in pertinent part:

> That the Plaintiff, Ronald Johnson, recover from the Defendants, Jerry Nyhart, Clarajo Nyhart and Nyhart Ranch, Inc., the following:

(Emphasis added.) On appeal, Jerry "admits that the Plaintiff obtained personal jurisdiction over him, but is unaware if personal

15

jurisdiction was obtained over Clara Jo [sic] Nyhart" and "is unable to verify if the Plaintiff ever obtained service upon his former wife." Jerry argues that the judgment against Clarajo is invalid because (1) the District Court lacked personal jurisdiction over her due to Johnson's failure to serve her with a summons and complaint, or (2) if service was made, the District Court failed to give "any notice of entry of default" against her.

Johnson concedes that he did not serve Clarajo because she was not a necessary party to the resolution of the case. Our review of the record confirms that Clarajo was not served with a summons or complaint in this case. We conclude that the District Court lacked personal jurisdiction over her and erroneously entered judgment against her. We, therefore, vacate the District Court's judgment as it pertains to Clarajo.

Affirmed as to Issues 1 and 2; the judgment as to Clarajo Nyhart is hereby vacated.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

16