No. 96-413

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

LLOYD BACHE and VIRGINIA BACHE,

      Plaintiffs and Respondents,

  v.

MARK OWENS, d/b/a MARK OWENS LOGGING,

      Defendant, Counterclaimant,
      and Appellant.

FILED

DEC 10 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Nineteenth Judicial District,
                 In and for the County of Lincoln,
                 The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          I. James Heckathorn, Murphy, Robinson,
          Heckathorn & Phillips, Kalispell, Montana

      For Respondents:

          Lon J. Dale, Milodragovich, Steinbrenner
          & Binney, Missoula, Montana

Submitted on Briefs:  November 7, 1996

Decided:  December 10, 1996

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The respondents, Lloyd Bache and Virginia Bache, filed an action against the appellant, Mark Owens, d/b/a Mark Owens Logging, in the District Court for the Nineteenth Judicial District in Lincoln County to enjoin Owens from encroaching on an easement which they alleged had been established in their favor. Owens filed a counterclaim for specific performance of the buy-sell agreement entered into between the parties and for other relief. The District Court granted summary judgment in favor of the Baches, and denied Owens' motion for summary judgment. Owens appeals the judgment of the District Court. We affirm the District Court.

The dispositive issue on appeal is whether the District Court erred when it denied Owens' motion for summary judgment, and granted summary judgment in favor of the Baches.

FACTUAL BACKGROUND

The Baches owned approximately 34 acres of property in Lincoln County. In April 1988, they entered into an agreement with Owens for the sale and purchase of 2.42 acres of their property. Pursuant to the Agreement to Sell and Purchase ("the Agreement"), the Baches promised to:

> [C]onvey the real property by Warranty Deed, free of all liens and encumbrances except those described in the title insurance section of this agreement.

The title insurance section of the Agreement provided that the Baches would:

> [F]urnish Buyer Title Insurance . . . committing to insure merchantable title to the real property in the Buyer's name, free and clear of all liens and encumbrances except: encumbrances hereinabove mentioned,

2

zoning ordinances, building and use restrictions, reservations in federal patents, beneficial utility easements apparent or of record, easements of record, and no others.

Subsequently, a Preliminary Title Insurance Policy was issued with regard to the property, and provided that:

PRIOR TO THE ISSUANCE OF TITLE INSURANCE, a complete legal description must be placed of record in the office of the Lincoln County Clerk and Recorder.

On July 6, 1988, the Baches filed Certificate of Survey Number 1657 ("COS No. 1657") with the Lincoln County Clerk and Recorder. COS No. 1657 depicts two easements along the westerly border of the property: (1) a thirty-foot-wide private roadway easement, retained by the Baches; and (2) a public utility easement. On that same day, the Baches executed a Warranty Deed in favor of Owens. The deed describes the property, and references COS No. 1657.

On July 8, 1988, the parties finalized their transaction, and executed a Contract for Deed which also makes reference to COS No. 1657.

During 1991 and 1992, Owens constructed a building on the property he purchased from the Baches. He and his building contractor, Mike Helberg, examined COS No. 1657 prior to establishing the building site. However, they misidentified the easement boundary, and constructed the building only six feet from the property boundary. As a result, the building encroached upon twenty-four feet of the Baches' easement.

The Baches filed an action in the District Court. They sought the removal of Owens' building, and contract remedies for the obstruction of their easement. Owens contended that no easement

3

existed, and asserted counterclaims for specific performance, breach of contract, estoppel, fraud and deceit, quiet title, slander of title, and punitive damages.

Owens moved for partial summary judgment. He contended that, as a matter of law, the land sale documents did not create an access easement in favor of the Baches.

The Baches filed their own motion for partial summary judgment. They asked the District Court to conclude, as a matter of law, that the land sale documents created an easement by reservation in their favor.

The District Court granted partial summary judgment in favor of the Baches, and certified its judgment as final pursuant to Rule 54(b), M.R.Civ.P., for purposes of appeal. On appeal, in *Bache I*, we held that the parties' land sale documents created a valid easement in favor of the Baches. We then remanded the case to the District Court for its determination of the remaining issues. *Bache v. Owens* (1994), 267 Mont. 279, 883 P.2d 817.

On remand, the Baches filed a motion for dismissal of Owens' counterclaims by summary judgment. Owens also moved for summary judgment in his favor. He claimed that the existence of an easement contradicts the express provisions of the Agreement. The District Court denied Owens' motion for summary judgment, and granted summary judgment in favor of the Baches.

Subsequently, the Baches again moved for summary judgment on the remaining issues. They requested injunctive relief to enjoin Owens from interfering with their easement, and to require him to

remove his building. They also requested an award of their attorney fees. The District Court granted the Baches' motion, and certified its judgment as final.

## DISCUSSION

Did the District Court err when it denied Owens' motion for summary judgment, and granted summary judgment in favor of the Baches?

Summary judgment is governed by Rule 56(c), M.R.Civ.P., which provides, in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of summary judgment is to encourage judicial economy through the elimination of any unnecessary trial. However, summary judgment is not a substitute for trial if a genuine factual controversy exists. *Reaves v. Reinbold* (1980), 189 Mont. 284, 288, 615 P.2d 896, 898.

It is well established that the moving party must prove that it is entitled to judgment as a matter of law. To do this, it is required to show a complete absence of any genuine factual issues. *D'Agostino v. Swanson* (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. To defeat the motion, the nonmoving party must set forth facts which demonstrate that a genuine factual issue exists. *O'Bagy v. First Interstate Bank of Missoula* (1990), 241 Mont. 44, 46, 785 P.2d 190, 191.

5

On appeal, Owens maintains that the District Court erred when it denied his counterclaims. On that basis, he contends that summary judgment for the Baches should be reversed, and that summary judgment should, instead, be granted in his favor. We will, therefore, address each of his counterclaims asserted on appeal.

## SPECIFIC PERFORMANCE

The Agreement among the parties did not explicitly mention the Baches' easement. Owens maintains that the Agreement is a binding contract which establishes the terms of the sale, and that the subsequent creation of the Baches' easement constitutes a modification. This modification, he asserts, is invalid because it was not supported by consideration, and was not a product of the parties' mutual consent. Therefore, he contends that he is entitled to specific performance of the strict terms of the Agreement.

Relevant to our consideration of Owens' argument is the law of the case doctrine, which provides:

> [I]n deciding a case upon appeal, when the Supreme Court states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent proceedings, both in the trial court and upon subsequent appeal.

*Haines Pipeline Construction, Inc. v. Montana Power Co.* (1994), 265 Mont. 282, 289, 876 P.2d 632, 637 (citing *Zavarelli v. Might* (1989), 239 Mont. 120, 124, 779 P.2d 489, 492).

In *Bache I*, we stated that there were four instruments of conveyance: (1) the Agreement to Sell and Purchase ("the

6

Agreement"); (2) the Warranty Deed; (3) the Contract for Deed; and (4) Certificate of Survey Number 1657 ("COS No. 1657"). We interpreted those four instruments, and held that they established a valid easement in favor of the Baches. *Bache I*, 267 Mont. at 286, 883 P.2d at 822.

Owens' counterclaim is, in essence, a collateral attack on our prior holding in *Bache I*. As a result of that decision, the Baches successfully established the existence of a valid easement in their favor on Owens' property; they cannot now be compelled, by an order requiring specific performance, to forfeit that interest.

Furthermore, the Baches complied with the terms of the Agreement. Therefore, contrary to Owens' assertions, there was not a modification of the Agreement, nor was one necessary.

Pursuant to the Agreement, the Baches promised to:

> [C]onvey the real property by Warranty Deed, free of all liens and encumbrances except those described in the title insurance section of this agreement.

(Emphasis added.)

The title insurance section of the Agreement provided that the Baches would:

> [F]urnish Buyer Title Insurance . . . committing to insure merchantable title to the real property in the Buyer's name, free and clear of all liens and encumbrances except: encumbrances hereinabove mentioned, zoning ordinances, building and use restrictions, reservations in federal patents, beneficial utility easements apparent or of record, easements of record, and no others.

(Emphasis added.)

7

Subsequently, a Preliminary Title Insurance Policy, which was required by the Agreement, was issued with regard to the property. It provided that:

> PRIOR TO THE ISSUANCE OF TITLE INSURANCE, a complete legal description must be placed of record in the office of the Lincoln County Clerk and Recorder.

The Baches filed COS No. 1657, which contains their easement, prior to closing, and in accordance with the Preliminary Title Insurance Policy. Both the Warranty Deed and the Contract for Deed reference COS No. 1657. As a result, the easement in favor of the Baches was, in fact, "of record," and Owens had constructive notice of its existence.

## BREACH OF CONTRACT

Owens maintains that the Baches did not comply with the terms of the Agreement, and have, therefore, breached the terms of the parties' contract. This counterclaim is subsumed by the claim for specific performance, and fails for the same reasons.

## ESTOPPEL

Owens asserts that the Baches are estopped from claiming an easement. He contends that the Baches concealed material facts with the knowledge that they would be acted upon, and that, as a result, he changed his position for the worse.

We begin our analysis with the principle that, "[e]quitable estoppel is not favored and will be sustained only upon clear and convincing evidence." *Ducham v. Tuma* (1994), 265 Mont. 436, 441, 877 P.2d 1002, 1006.

8

The six required elements of equitable estoppel are as follows:

1) There must be conduct, acts, language or silence by the estopped party amounting to a representation or concealment of facts;

2) these facts must be known to the estopped party at the time of the conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to the estopped party;

3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time they were acted upon;

4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be acted upon;

5) the conduct must be relied upon by the other party; and

6) the other party must in fact act upon it in such a manner as to change the other party's position for the worse.

*Ducham*, 265 Mont. at 441-42, 877 P.2d at 1006 (emphasis added).

Owens has failed to present clear and convincing evidence in support of these elements. Although the preliminary title commitment did not reference the Baches' easement, it did state:

PRIOR TO THE ISSUANCE OF TITLE INSURANCE, a complete legal description must be placed of record in the office of the Lincoln County Clerk and Recorder.

The Baches complied with this provision when, prior to the issuance of title insurance, they filed COS No. 1657 with the Lincoln County Clerk and Recorder. As we have previously held, the Agreement, the Warranty Deed, the Contract for Deed, and COS No. 1657 created a valid easement in favor of the Baches. Based on these documents of conveyance, Owens had constructive notice of the

9

easement, and his estoppel claim necessarily fails as a matter of law.

## FRAUD & DECEIT

Owens' claim for fraud and deceit is based upon the alleged failure of the Baches to disclose the existence of their easement. This claim is similar to the estoppel claim, and fails, as a matter of law, for the same reason.

The Warranty Deed and the Contract for Deed both reference COS No. 1657, and at the time of closing, the Baches' easement was "of record." As a result, Owens had constructive notice of the easement by operation of law. The Baches had no affirmative duty to disclose that which was, by virtue of the conveyancing documents, of public record. Owens cannot now assert that the existence of the easement was a fact which was fraudulently and deceitfully suppressed by the Baches.

## QUIET TITLE

Finally, Owens claims that he is entitled to quiet his title. This claim was resolved by our decision in *Bache I*. In that case, we held that the Baches have a legitimate right, title, and interest in their easement on Owens' property. They do not claim an easement. They *have* a valid easement. Their easement, therefore, is not a cloud on Owens' title, and his claim fails as a matter of law.

We conclude that there are no genuine issues of material fact, and that the Baches are entitled to judgment as a matter of law. Accordingly, we hold that the District Court did not err when it

denied Owens' motion for summary judgment, and granted summary judgment in favor of the Baches.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

Justice W. William Leaphart, dissenting.

I dissent with regard to the breach of contract claim. The Court treats Owens' claims as collateral attacks upon our holding in Bache I in which we held that the Buy/Sell Agreement, Contract for Deed and Certificate of Survey, created a valid easement in favor of Bache. The fact that these instruments created a valid easement as of the time of closing, however, does not preclude a claim that such an easement was not contemplated by the original Buy/Sell Agreement which provided that Baches would convey the property "free of all liens and encumbrances except those described in the title insurance section of this agreement." The title insurance section of the Agreement provided that Baches would convey title free and clear of all liens and encumbrances except easements of record. When the Agreement speaks of easements "of record," there is an ambiguity as to time; that is, "of record" as of when. Despite the fact that Baches' easement was "of record" as of the date of the closing, there is a genuine issue of material fact as to whether, in signing the Agreement, the parties only contemplated easements of record as of the April 1988 date of the Agreement as opposed to an easement which was recorded on July 6th, two days before the closing. When there is an ambiguity in the contract, the intent becomes a question for the jury. Klawitter v. Dettman (1994), 268 Mont. 275, 281, 886 P.2d 416, 420; see also Johnson v. Nyhart (1995), 269 Mont. 379, 387, 889 P.2d 1170, 1174.

12

I would reverse the summary judgment as to breach of contract and remand for trial on that issue.

_____
_____Justice_____

Justices Karla M. Gray and James C. Nelson join in the foregoing dissent.

_____
_____Justice_____

13