No. 82-52

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

HAROLD LANDON,

                    Petitioner and Appellant,

    vs.

LABOR STANDARDS DIVISION,
DEPARTMENT OF LABOR AND INDUSTRY,
and TREND BUSINESS COLLEGES, INC.,

                    Defendants and Respondents.

---

Appeal from:  District Court of the Fourth Judicial District,
              In and for the County of Missoula
              Honorable John Henson, Judge presiding.

Counsel of Record:

    For Appellant:

        Jonkel and Kemmis, Missoula, Montana

    For Respondents:

        Paul J. Van Tricht, Helena, Montana
        Garlington, Lohn and Robinson, Missoula, Montana

---

                            Submitted on briefs: May 13, 1982

                            Decided: September 2, 1982

Filed: SEP - 2 1982

Thomas J. Kearney
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Harold Landon filed a wage claim with the Labor Standards Division of the Montana Department of Labor and Industry (Department) on December 28, 1979. After a hearing, a decision was rendered in favor of Landon's employer, Trend Business Colleges (Trend). Landon filed a petition for judicial review in the District Court of the Fourth Judicial District, Missoula County. The Department and Trend were named as respondents. On November 6, 1981, the District Court issued an order affirming the Department's decision. Landon appeals from that order.

Landon worked as an admissions representative for Trend from the fall of 1976 until his termination on August 20, 1979. His duties consisted of recruiting high school students for enrollment and registration in business courses offered by Trend. Landon was paid on a commission basis as follows: (a) an agreed-upon portion of the commission was paid at the time of enrollment upon payment of tuition by the student; (b) another agreed-upon portion of the commission was paid when the student completed 30 days of school (referred to as a "start bonus"); and (c) a final agreed-upon portion of the commission was paid when the student completed 90 days of school.

Landon's employment was covered by a written employment agreement which provided for payment of commission upon termination of employment as follows:

> "In the event of termination, whether voluntary
> or involuntary, final settlement will be within
> 90 days on all collected amounts plus 50% of the
> uncollected tuition amounts. (This reduction
> is necessary to cover no show and dropouts prior
> to course completion.)"

Under this agreement, all of Landon's commissions would have been calculated as of August 20, 1979. In October 1979, however, this agreement was modified by a second agreement which stated:

> "I. TREND, upon execution of this agreement, will calculate and disburse to LANDON earnings based upon the following terms:
>
> "A. For purposes of this agreement, the last day of employment of LANDON is established as August 20, 1979.
>
> "B. For a period of ninety (90) days after his last date of employment, TREND will calculate as 'earnings' any and all 'start bonuses' and bonuses due at '90 days-in-school' accruing from in-school students on contracts accepted by TREND from LANDON up to and including his last date of employment.
>
> "C. In addition to the foregoing item B, TREND will project from any contracts accepted from Landon up to and including his last date of employment for student starting dates subsequent to ninety (90) days after his termination, any and all 'start bonuses' and bonuses due at '90 days-in-school' that might or might not accrue from those future transactions, and calculate as 'earnings' a lump-sum amount equal to fifty percent (50%) of that aggregated calculation.
>
> "D. From the gross amount of earnings calculated under items B and C, foregoing, TREND will make any appropriate standard payroll deductions and deduct from it any monies due TREND from advances against such earnings previously disbursed to LANDON."

The terms of the agreement were further modified by the introductory paragraph of the modification, which stated: "In event of any failure of this agreement to prevail, it is contemplated by both parties that the terms and policies governing terminations initially established between them shall prevail."

Landon interpreted paragraphs I.B. and I.C. of the modified agreement to mean that he would receive his full commission for any students who started school in September and reached the "90-day in school" mark in December. According to

Landon's interpretation, he would have received a net commission of $3,786.84. Under Trend's interpretation of the agreement, Landon would receive his full commission only until November 20, 1979, which is 90 days from Landon's termination. Therefore, the 90-day commissions for students starting school in September would be paid at the 50 percent level, and Landon's net commission would be $207.91.

The Department found that Landon did not prove he was due more than $207.91. After review of the administrative record, the District Court affirmed the Department's order.

The single issue presented on appeal is: Whether the District Court erred as a matter of law in affirming the order of the Department.

Landon contends that the District Court did in fact err in affirming the Department's order because the District Court failed to apply the proper rules of interpretation to the employment agreement. Landon argues that paragraph I.B. is ambiguous, and should therefore be construed most strongly against Trend, the party that drafted the agreement.

Trend, on the other hand, argues that the agreement entered by the parties on October 22, 1979, modified, but did not supersede, the original employment agreement. If both agreements are read together, Trend argues, the meaning of the agreement is not ambiguous.

The Department, in its findings of fact, agreed that the October 22, 1979, agreement modified, but did not supersede the original agreement. Therefore, the Department found that Trend owed Landon $207.91.

When reviewing an administrative decision, the District Court function is set forth in section 2-4-704, MCA:

-4-

"(1)   The review shall be conducted by the
court without a jury and shall be confined to
the record.. . .

"(2)   The court may not substitute its judgment
for that of the agency as to the weight of the
evidence on questions of fact.   The court may
affirm the decision of the agency or remand the
case for further proceedings.   The court may reverse
or modify the decision if substantial rights of the
appellant have been prejudiced because the administrative
findings, inferences, conclusions, or decisions are:

"(a)   in violation of constitutional or statutory
provisions;

"(b)   in excess of statutory authority of the
agency;

"(c)   made upon unlawful procedure;

"(d)   affected by other error of law;

"(e)   clearly erroneous in view of the reliable,
probative, and substantial evidence on the whole
record;

"(f)   arbitrary or capricious or characterized by
abuse of discretion or clearly unwarranted exercise
of discretion; or

"(g)   because findings of fact, upon issues essential to
the decision, were not made although requested."

The Supreme Court is constrained by limitations when
reviewing District Court orders which uphold agency decisions.
As stated in In the Matter of Shaw (1980), ___ Mont. ____,
615 P.2d 910, 37 St.Rep. 1480, "In reviewing administrative
decisions, this Court need only determine whether there is
substantial evidence to support the findings.   We will not substitute
our judgment for that of the administrative body if such
evidence is found to exist."

Applying these principles to the present case, we find
there is substantial evidence to support the Department's
order.   Landon contends an error of law exists under section
2-4-704(2)(d), MCA, because the ambiguities in the employment
agreement were not correctly dealt with by the Department.
Therefore, section 28-3-206, MCA, applies:   "In cases of

-5-

uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." In this case, Landon contends that Trend drafted the employment agreement, Trend caused the uncertainty to exist, and the agreement should be construed most strongly against it.

Viewing the agreement most strongly in Landon's favor, he contends paragraph I.B. should be read to mean that any commission which might accrue from students who are actually "in-school" during the 90-day period from September 20, 1979, to December 20, 1979, will be paid in full to Landon. Landon's interpretation is clearly incorrect. Even when the agreement is read in Landon's favor, it is clear that payment of full commissions ends on November 20, 1979. Paragraph I.B. states, "For a period of ninety (90) days after his last date of employment, TREND will calculate as 'earnings' any . . . bonuses due at '90 days-in-school'. . ." Landon's employment was terminated on August 20, 1979. Therefore, "a period of 90 days after his last date of employment" ends on November 20, 1979. Therefore, November 20, 1979, is the date when payment of the full commission ceases, and commissions paid for students who complete the "90 days-in-school" mark on December 20, 1979, will be paid at the 50 percent commission level.

Nowhere in the original agreement or the modification is there a provision for more than a 50 percent commission after the expiration of 90 days from termination of employment. The record reveals substantial evidence existed upon which the Department based its findings that the original employment agreement was modified by the October 22, 1979 agreement.

-6-

Under this interpretation, the Department acted within its discretion in finding that Landon was due $207.91. In contrast, a review of the record reveals that Landon is unable to sustain his burden of proving that he was owed more than $207.91. Therefore, this Court cannot rule that the District Court's order was either clearly erroneous or based on an error of law.

The District Court's order is affirmed.

_John C. Sheehy_
                          Justice

We Concur:

_Frank J. Haswell_
   Chief Justice

_John Conway Harrison_

_Frank G. Morrison_

_____
        Justices