No. 92-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

     Plaintiff and Respondent,

-vs-

MYRON CHRISTIAN LARSON,

     Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          William F. Hooks, Appellate Defender Office, Helena,
Montana

     For Respondent:

          Marc Racicot, Attorney General, Helena, Montana;
George Schunk, Asst. Attorney General, Helena,
Montana; Mike McGrath, Lewis & Clark County
Attorney, Helena, Montana

FILED

Filed: DEC 15 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:  October 8, 1992
Decided:  December 15, 1992

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a judgment of the First Judicial District Court, Lewis and Clark County, convicting Larson of negligent endangerment in violation of § 45-5-208, MCA. Affirmed.

The issues on appeal are:

1. Whether a trial judge may allow the prosecution to compare the blood alcohol level of a defendant in a non-DUI case with the blood alcohol level that the scientific community has determined will impair a person's ability to drive an automobile.

2. Whether the jury heard sufficient evidence to find that Larson acted negligently.

On July 21, 1991, five-year old Brenda Perry suffered fatal injuries when a horse she and Myron Larson were riding reared and fell backward, crushing Brenda. She died a short time later of internal bleeding.

The accident occurred during a barbecue at a rural home near Helena. Larson attended the barbecue with his son, his girlfriend Kate Perry, and Kate's children. Brenda was one of Kate's children.

Larson had consumed several alcoholic beverages that day. He testified that he drank four sixteen-ounce cans of beer and two shots of whiskey. The coroner, however, testified that Larson admitted to drinking six or seven cans of beer and two shots of whiskey.

Larson saw the hostess, Heidi St. Germaine, riding a horse

2

named Taz and asked St. Germaine if he could ride the animal. Before St. Germaine allowed Larson to ride Taz, she gave him instructions on handling the horse. She told Larson that Taz was "inexperienced" and "hot-blooded." She also told him that Taz did not like to have her mouth tugged by the reins.

Larson rode the horse for a while, then returned to talk to St. Germaine. Larson asked her if his son could go for a ride. St. Germaine testified that she told Larson she did not want children riding the horse. She also testified that she told him the horse did not like anything, even saddle bags, behind the saddle. Larson, on the other hand, testified that St. Germaine told him she did not want children on the horse alone. He also testified that she said nothing about riding double.

Moments later, Brenda said that she wanted a ride. Kate Perry, Brenda's mother, lifted Brenda onto the horse. She grabbed Larson around the waist and gripped the horse's flanks with her legs. The horse began to "crow-hop," so Larson pulled back on the reins. The horse reared straight up and fell backward onto Larson and Brenda. A bystander rushed Brenda to the hospital, but she died of internal injuries.

At the hospital, law enforcement officers requested that Larson submit to a blood test, because a strong odor of alcoholic beverage emanated from his breath. Larson refused, stating either, "It's obvious that I've been drinking" or, "Can't you see I'm drunk."

After the officers got a search warrant, a lab technician drew

a blood sample from Larson. By then, over three hours had elapsed since the accident. Lynn Kurtz, a forensic scientist for the State Crime Lab, measured Larson's blood alcohol content at .17 grams of alcohol per 100 milliliters of blood. Kurtz estimated that Larson had a blood alcohol content between .20 and .27 at the time of the accident.

At trial, Larson objected to any discussion of the statutory level of intoxication sufficient for an inference that a DUI defendant is under the influence of alcohol. The court sustained the objection.

The court, however, permitted Kurtz to compare Larson's blood alcohol level with the level that the scientific community has determined will impair a person's ability to drive a motor vehicle. Kurtz testified that the scientific community has determined that a blood alcohol level of .08 grams of alcohol per 100 milliliters of blood will impair a person's ability to safely operate a motor vehicle.

In addition to the physical effects of alcohol, Kurtz testified concerning the effect of alcohol on a person's reasoning and judgment. He said that a person with a blood alcohol level as low as .05 "will do stupid things."

The prosecution argued that Larson made mistakes in judgment due to his alcohol consumption. In closing, the prosecution mentioned to the jury that Larson's blood alcohol level at the time of the accident was three times the level that will impair a person's ability to drive an automobile. The prosecution also

4

argued that a person who is too impaired to drive an automobile safely is too impaired to ride a horse safely, and certainly is too impaired to allow a five-year old child on a high-spirited horse with him. The prosecution closed by stating:

> [I]t's not a crime to put a child on a horse. That's true. It's not. It's not a crime to drive an automobile. But had Myron Larson been .17, gets in a car, runs off the interstate, plows into another car and people are killed, we wouldn't have any trouble with that. He would be held accountable for his own acts. I submit to you this is the same situation. He engaged in a course of conduct that created a substantial risk of death for this child. He should be held accountable.

The jury found Larson guilty of negligent endangerment in violation of § 45-5-208, MCA. This appeal follows.

I.

May a trial judge allow the prosecution to compare the blood alcohol level of a defendant in a non-DUI case with the blood alcohol level that the scientific community has determined will impair a person's ability to drive an automobile?

We have consistently held that a trial judge has great discretion in ruling on the admissibility of evidence. State v. Oman (1985), 218 Mont. 260, 263, 707 P.2d 1117, 1119 (citing cases). This Court will overturn a trial judge's determination of the admissibility of evidence only for an abuse of discretion. Oman, 707 P.2d at 1119.

Larson contends that "blood alcohol standards, which establish whether a person is too impaired to drive safely, apply only in cases involving a charge of driving under the influence." He reasons that a comparison between the blood alcohol level which

5

impairs one's ability to drive, and Larson's blood alcohol level on the day of the accident is actually a "DUI-type presumption" in disguise.

To support his contention, Larson relies on cases concerning a statute that, at one time, created a presumption of intoxication if a DUI defendant had a certain blood alcohol level. See generally § 61-8-401, MCA; State v. Morgan (1982), 198 Mont. 391, 646 P.2d 1177; State v. Leverett (1990), 245 Mont. 124, 799 P.2d 119. In Leverett, this Court held it was unconstitutional, thus reversible error, to give a jury instruction that raised a mandatory rebuttable presumption of an element essential to a criminal charge. 799 P.2d at 124. In Morgan, we noted that after a court has held that the jury would not be instructed on the presumed level of intoxication, a prosecutor should not refer to such a presumption. In that case, despite a pre-trial order forbidding it, the prosecutor repeatedly referred to the blood alcohol level that gave rise to a presumption of intoxication. Morgan, 646 P.2d at 1181-82.

Neither case applies to the case at hand. Montana's statute no longer mandates a presumption that a DUI defendant with a certain blood alcohol content is intoxicated. Rather, it allows the trier of fact to infer that a person with a certain blood alcohol level is under the influence of alcohol for purposes of the DUI law. See § 61-8-401(4)(c), MCA. The prosecution did not mention the contents of the statute after the court sustained Larson's objection to any mention of the statute. Therefore,

6

Larson's contention that a comparison of a non-DUI defendant's blood alcohol level with the level which will impair a driver is actually a "DUI-type presumption" is unfounded.

Larson also contends that the level of blood alcohol which will impair a person's ability to drive is irrelevant to his conduct relative to a high-spirited young horse. On the contrary, "[r]elvant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid.

> The test of relevance is whether an item of evidence will have any value, as determined by logic and experience, in proving the proposition for which it is offered. The standard used to measure this acceptable probative value is 'any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence'.

State v. Fitzpatrick (1980), 186 Mont. 187, 207, 606 P.2d 1343, 1354 (quoting M.R.Evid. Commission Comments).

At Larson's trial, the prosecution offered his blood alcohol level to show that alcohol had impaired his reactions and judgment when he chose to ride double on a high-spirited horse with a young girl. Larson's blood alcohol level on the day of the accident is relevant.

The comparison of Larson's blood alcohol level with that which the scientific community has determined will impair a person's ability to drive a motor vehicle is also relevant. The comparison aided the jury in evaluating Larson's level of intoxication. It allowed the jurors to apply their experience and logic to determine

7

whether Larson's level of intoxication clouded his judgment and impaired his reactions, and its probative value outweighs any prejudice to the defendant. We hold that the court did not abuse its discretion in admitting the comparison.

II.

Did the jury hear sufficient evidence to find that Larson acted negligently?

When reviewing whether evidence was sufficient to support a criminal conviction, this Court views the facts in a light most favorable to the prosecution. The standard of review is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. McLain (1991), 249 Mont. 242, 246, 815 P.2d 147, 150; See also, Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

The jury convicted Larson of negligent endangerment. This required a finding that Larson negligently engaged in conduct which created a substantial risk of death or serious bodily injury to another. See § 45-5-208, MCA. Larson contends that his conduct did not amount to criminal negligence.

Criminal negligence is defined as follows:

[A] person acts negligently with respect to a result or to a circumstance described by a statute defining an offense . . . when he disregards a risk of which he should be aware that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Gross deviation" means a deviation that is considerably greater than lack of ordinary care.

Section 45-2-101(37), MCA.

8

At trial, the jury heard evidence that a blood alcohol level of .05 begins to affect a person's reasoning and judgment. The scientific community has determined that a blood alcohol level of .08 will affect a person's reactions and judgment to the point of impairing the person's ability to safely operate a motor vehicle.

Shortly before the accident Larson had consumed at least four cans of beer and two shots of whiskey. His blood alcohol level at the time of the accident was at least .17, and likely much higher.

In that condition, Larson mounted a horse described to him by the owner as "hot-blooded" and "inexperienced." The owner of the horse had warned him not to tug back on the reins and not to give rides to children. Yet, Larson allowed a five-year old child on the horse with him. When the horse began to jump, Larson reined the horse back. The animal fell over backward, fatally crushing the child.

Upon these facts, a rational jury could find that Larson's conduct amounted to a gross deviation from the ordinary care that a reasonable person would observe in a similar situation. We hold that the jury was justified in finding beyond a reasonable doubt that Larson acted negligently. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

9

Karla M. Gray

Tom Trieweiler

William E. Hunt Sr

Fred J. Weber

Justices

December 15, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

William F. Hooks, Appellate Defender
Appellate Defender
Capitol Station
Helena, MT 59620

HON. MARC RACICOT, Attorney General
George Schunk, Assistant
Justice Bldg.
Helena, MT 59620

Michael McGrath
Lewis & Clark County Attorney
228 Broadway
Helena, MT 59623

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy