No. 95-152

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

TRAVELERS INSURANCE COMPANY,
A Connecticut Corporation,

Plaintiff and Respondent,

v.

HOLIDAY VILLAGE SHOPPING CENTER LIMITED
PARTNERSHIP, a Montana limited partnership;
SIX SIXTY SEVEN, INC.; HILL COUNTY, MONTANA;
ROBERT L. BROWN; ROBERT W. RECTOR; RICHARD
F. BOHN; JACK OLIVER; CLARKE STREEPER; and
O.B.S. PARTNERSHIP,

Defendants and Appellants.

FILED

OCT 16 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twelfth Judicial District,
               In and for the County of Hill,
               The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                James H. Goetz (argued), Robert K. Baldwin (argued);
                Goetz, Madden & Dunn, Bozeman, Montana

                Frank Altman, Daniel A. Boucher; Altman & Boucher,
                Havre, Montana

                David G. Rice, Hill County Attorney, Havre, Montana

        For Respondent:

                William A. Squires (argued), Randall C. Lester;
                Matteucci, Falcon, Squires & Lester, Great Falls,
                Montana

                                        Argued:   April 2, 1996
                                        Submitted: June 27, 1996
                                        Decided:   December 16, 1996

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellants (collectively HVSC), appeal from the Amended Findings of Fact, Conclusions of Law, Judgment, and Decree of Foreclosure entered by the Twelfth Judicial District Court, Hill County, foreclosing their interest in the subject property and ordering a sheriff's sale. We reverse and remand.

We restate the issues raised by HVSC as follows:

1. Did the District Court err in determining that HVSC's interest in the subject property was subject to Travelers' liens?

2. Did the District Court err in determining that the subordination agreements executed by HVSC granted Travelers a security interest in the fee to the subject property?

3. Did the District Court err in determining that the leases were terminated and that Travelers would be entitled to relief from forfeiture?

4. Did the District Court err in not requiring the delinquent real property taxes to be paid out of the foreclosure sale proceeds and in ordering that the costs and attorneys' fees would be assessed at a later date?

*Factual Summary*

This case arises out of a complicated dispute relating to the financing of the Holiday Village Shopping Center located in Havre, Montana. The following facts are taken from the parties' statement of stipulated facts. Beginning in 1975, Hill County, Montana, and several adjoining landowners, Brown, Rector, Bohn, Oliver, and Streeper, entered into lease agreements with M & M Enterprises (M & M) covering the land upon which Holiday Village was constructed. The lease agreements had been modified several times since they were executed.

In the spring of 1978, Hill County and the adjoining

2

landowners executed and delivered subordination agreements to Travelers. These agreements were executed on M & M's behalf so that Travelers would advance the funds necessary to construct the shopping mall. In May of 1978, M & M executed and delivered a promissory note to Travelers. To secure payment of the promissory note, M & M executed and delivered a mortgage to Travelers. In October of 1980, M & M executed an assignment of lease in favor of Northwestern Union Trust Company (NWU); the same day, NWU assigned the lease to LIC, Inc. (LIC). At the same time, M & M executed a special warranty deed to NWU conveying its interest in the subject property and NWU subsequently conveyed its interest to LIC. M & M also executed an assignment of ground lease giving NWU all of its interest in the leasehold estates. Again, the ground leases were subsequently assigned to LIC. In 1986, LIC assigned its interest in the leasehold agreements to LAACO, Ltd. On May 30 and June 1, 1990, LAACO and Holiday Village entered into an assignment agreement and conveyance and Travelers and Holiday Village entered into an assumption agreement and consent.

HVSC failed to make the required payments due under the lease agreement to Hill County and to the adjoining landowners; therefore, HVSC was in default. In the spring of 1993, Hill County and the adjoining landowners issued notices of default for failure to make the required payments due under the terms of the leases. A receiver was appointed to manage HVSC in March of 1993 and has made monthly reports to the District Court regarding the financial condition of HVSC since his appointment.

In 1992, Travelers filed its complaint seeking a judgment on the monetary obligation and foreclosure of its security interest in both the real and personal property. In April of 1993, HVSC and its general partner, Six Sixty Seven, Inc., consented to the entry of judgment in favor of Travelers and foreclosure of its interest. Thus, HVSC is no longer litigating the instant appeal. In 1994, all of the remaining parties, Travelers, Hill County, and the adjoining landowners moved for summary judgment. The District Court ordered that Travelers recover a judgment against HVSC and Six Sixty Seven, Inc. pursuant to the stipulation that Hill County and Brown did not act as sureties and did not properly terminate the ground leases, and that Hill County and the adjoining landowners recover the monthly rent payments due under the terms of their leases to the date of the judgment. Finally, the District Court ordered that the subject property be sold at a sheriff's sale. Subsequently, Hill County and the adjoining landowners filed the instant appeal.

*Standard of review*

In reviewing a district court's grant of summary judgment we use the same criteria as that used by the district court; we are guided by Rule 56, M.R.Civ.P. Chilberg v. Rose (1995), 273 Mont. 414, 416, 903 P.2d 1377, 1378-79 (citing Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214). Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Chilberg, 903 P.2d at 1379. Here, the parties submitted a statement of

4

stipulated facts and the court entered its findings of fact, conclusions of law, and decree based on the stipulated facts and oral argument. No genuine issue of material fact exists.

In the instant case, the District Court determined that "[t]o the extent resolution of this matter turns on the construction and interpretation of written instruments, such a determination is a matter of law." In reviewing a district court's conclusions of law, we determine whether the court's interpretation of the law is correct. Stratemeyer v. Lincoln County (Mont. 1996), 915 P.2d 175, 177, 53 St.Rep. 245, 246 (citing Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686); Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

*Discussion*

Resolution of the appeal hinges upon an interpretation of the subordination agreements executed in 1978 by Hill County and the adjoining landowners in favor of Travelers. The subordination agreement with Hill County[1] provides in relevant part that:

*SUBORDINATION AGREEMENT*

. . . .

WHEREAS, the undersigned, Hill County, Montana, a political subdivision of the State of Montana, having an address of Havre, Montana, is the owner in fee simple absolute of the real property situated in Hill County, Montana, more particularly described on Exhibit A attached hereto and by this reference made a part hereof, and

WHEREAS, the undersigned by a lease dated August 29,

---

[1] The subordination agreement with the adjoining landowners is substantially identical to the agreement with Hill County.

5

1975, as supplemented by Supplemental Agreement dated November 1, 1976, and executed by the parties August 29, 1975 has leased the hereinbefore described real property to M & M Enterprises, a Montana Partnership; and

WHEREAS, M & M Enterprises has applied to the Travelers Insurance Company, a Connecticut corporation, hereinafter referred to as Travelers for a loan in the amount of FIVE MILLION EIGHT HUNDRED FIFTY THOUSAND and No/100 DOLLARS ($5,850,000.00) with interest, evidenced by a note dated ___February 8, 1978___ and secured by a mortgage on the Lessee's interest in the hereinbefore described real property of even date with said note and recorded on the ___14th day of June, 1978, in Book 140 of Mortgages on Page 348,___ Document Records of the Clerk and Recorder of Hill County, Montana, and

WHEREAS, Travelers is unwilling to make said loan or advance funds thereon unless it is assured that the *above described mortgage shall be a lien upon the undersigned's fee simple title* in the hereinbefore described real property and unless the undersigned gives Travelers the assurances hereinafter set forth, and

*WHEREAS, the undersigned is willing to subordinate its fee simple title to said real property* to said mortgage and is willing to give such assurance,

NOW, THEREFORE, in *consideration of the making of said loan to M & M ENTERPRISES, and to induce Travelers to advance funds thereon, the undersigned hereby subordinates all of its right, title and interest in and to said real property to the lien of said mortgage and agrees that said mortgage shall continue to be a first lien upon said property prior and superior in right to any right, title and interest of the undersigned in and to said real property.* The undersigned, however, shall not be liable for the payment of any indebtedness secured by said mortgage or the performance of any of the covenants or obligations of the mortgagor thereunder.

The undersigned further assures Travelers that the undersigned will not terminate the above described lease without the prior written consent of Travelers except in the case of a default thereunder by M & M ENTERPRISES in which case the undersigned agrees to give Travelers written notice thereof, specifying the default and Travelers shall have ninety (90) days after receipt of said notice within which to cure said default, and if the default is cured within said period, or if the default is one which cannot be cured within said period, but steps are taken in good faith during said period and diligently

6

pursued, the lease shall not be terminated[.] [Emphasis added.]

Hill County and the adjoining landowners assert that they are sureties for M & M and that the subordination agreements which they executed are not mortgages. Further, Hill County and the adjoining landowners assert that they were exonerated when Travelers released M & M from all liability without consent of Hill County and the adjoining landowners. Travelers argues that the subordination agreements subjected Hill County's and the adjoining landowners' fee interests to Travelers' lien and that the subordination agreements are, in fact, mortgages. Further, Travelers contends that the subordination agreements waive any statutory right of exoneration.

In resolving the parties' contentions, the District Court concluded that the above-quoted subordination agreement creates a contractual right of foreclosure as well as a statutory mortgage and an equitable mortgage under Montana law because it was "executed with all the formalities required for a grant of real property and the execution of a mortgage." However, the subordination agreements contain no words purporting to mortgage an interest in property. Section 71-1-204, MCA.

This Court has stated that "[a]s a general rule, construction and interpretation of written agreements, including contracts, is a question of law for the court to decide." Klawitter v. Dettmann (1994), 268 Mont. 275, 281, 886 P.2d 416, 420 (citing First Sec. Bank of Anaconda v. Vander Pas (1991), 250 Mont. 148, 152-53, 818 P.2d 384, 387). Similarly, it is a question of law whether

7

ambiguity exists in a written instrument. Klawitter, 886 P.2d at 420 (citing Audit Servs. Inc. v. Systad (1992), 252 Mont. 62, 65, 826 P.2d 549, 551); Johnson v. Nyhart (1995), 269 Mont. 379, 387, 889 P.2d 1170, 1174.

Hill County and the adjoining landowners argue that "[t]he subordination agreements do not, on their face, purport to be mortgages [and that] [i]t was error for the district court to conclude that they are mortgages without resort to extrinsic evidence." We agree. The District Court concluded that the "Subordination Agreements are unambiguous, and therefore the Court need not look to extrinsic evidence for interpretation of the same." We hold that the District Court erred in concluding that the subordination agreements were not ambiguous. The documents are titled "Subordination Agreement" rather than mortgages. Section 71-1-204, MCA, sets forth the form of a mortgage. The operative verb in the §204 mortgage form is to "mortgage." Although the text of the documents states that the *fee interest* is "subordinated," it does not contain language purporting to "mortgage" property to a mortgagee as security.

A subordination agreement only dictates the priorities between existing interests, for example lien holders--it does not mortgage an interest in the property. A mortgage "is a contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession." Section 71-1-101, MCA. The agreement at issue here has characteristics of both a subordination agreement and a mortgage. The confusion lies in

8

the fact that the agreement mixes the concepts of "subordinate" and "mortgage" by providing that Hill County and the adjoining landowners subordinate their fee simple interests to Travelers' mortgage. Subordinate means "[p]laced in a lower order, class, or rank . . . and having a lower position in a recognized scale; secondary, minor." BLACK'S LAW DICTIONARY 1426 (6th ed. 1990). Since, by definition, a fee simple interest is absolute and without condition or limitation, an agreement purporting to "subordinate" a fee simple interest presents a paradox; can a fee simple interest, which is absolute and without limitation, be placed in a lower or secondary position by a "subordination agreement?" Thus, the language of the agreements is inherently and internally inconsistent.

The District Court was incorrect in holding that the agreements are unambiguous and that resort to extrinsic evidence was unnecessary. The language of the agreements is ambiguous. Further, Hill County and the adjoining landowners assert that had the extrinsic evidence been considered it would show that Travelers itself did not consider the subordination agreements to be mortgages. To resolve this ambiguity, the court must consider the intent of the parties at the time of the execution of the instrument. As this Court has recognized, "to establish this intention [to create a mortgage] the courts will examine the surrounding circumstances." Boysun v. Boysun (1962), 140 Mont. 85, 88, 368 P.2d 439, 440.

The dissenters correctly point out that § 28-3-206, MCA,

9

provides that in cases of uncertainty, the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist. It should be noted, however, that this is not a peremptory rule. It does not require that the non-drafting party prevail in all cases. Rather, it is a rule of interpretation that requires that the court interpret the contract "most strongly" against the drafting party. For example, in Landon v. Labor Standards Division (1982), 200 Mont. 153, 158, 649 P.2d 1341, 1343-44, even after the court applied § 28-3-206, MCA, and interpreted the contract most strongly against the employer as the party who caused the uncertainty to exist, it still reached the conclusion that the employer was correct. In the present case, although § 28-3-206, MCA, mandates that the District Court interpret the agreement most strongly against Travelers in deciding whether the agreement constitutes a subordination agreement or a mortgage, that statute does not necessarily dictate the outcome of the court's deliberation after consideration of the extrinsic evidence.

*Were the ground leases properly terminated?*

Travelers filed its complaint in this matter on November 13, 1992, months before Hill County and Brown, et al. issued their February and March, 1993 notices of default on the ground leases. On June 18, 1993, Travelers sought the District Court's permission to deposit the lease payments into court pending resolution of the effect of the subordination agreements. The court denied the request.

10

The subordination agreements provide:

If the default is one which cannot be cured within said period, but steps are taken in good faith during said period and diligently pursued, the lease shall not be terminated[.]

The District Court concluded that, in light of Travelers' timely pursuit of the litigation and request to deposit funds with the District Court:

Travelers so acted in good faith, and was not grossly negligent or willful in its refusal to cure the defaults alleged by the Lessors. Therefore, the leases were not properly terminated[.] . . .

The District Court's conclusion that the ground leases were not properly terminated is correct and it is therefore affirmed. Accordingly, we also affirm the holding that Hill County and Brown, et al. are entitled to receive the monthly lease payments as specified in the judgment.

*Summary*

We affirm the judgment against Holiday Village Shopping Center Limited Partnership and Six Sixty Seven, Inc. in the amounts specified in paragraph 1(a) through 1(h) of the Judgment and Decree of Foreclosure with interest at the rate of 12% per annum as provided in the Promissory Note.

In its Conclusion of Law #16, the District Court stated:

16. Hill County and Brown, et al. did not act as sureties as defined by Section 28-11-401, Mont. Code Ann. (1993). The subject Subordination Agreements were executed for the benefit of Hill County and Brown, et al. as part of their contractual obligations under the subject ground leases to induce the execution of the same by the Mitchells [co-partners of M & M], thus securing a benefit unto Hill County and Brown, et al. Accordingly, the subject Subordination Agreements were not extinguished or exonerated by the release from liability

11

of M & M Enterprises and the Mitchells from the Promissory Note and Mortgage.

The District Court's conclusion that Hill County and Brown, et al. were not, under the specific terms of the ground leases and the subordination agreements, acting as sureties is correct and is therefore affirmed. Accordingly, Hill County and Brown, et al. were not exonerated by the release of M & M Enterprises and the Mitchells from the Promissory Note and Mortgage.

We reverse the judgment of the District Court insofar as it holds that the subordination agreements create a contractual right of foreclosure, a statutory mortgage or an equitable mortgage with regard to appellants' fee interest in the real property. In that the court's award of costs and attorneys' fees is dependent upon its holding that the agreements constitute mortgages, that award is also reversed.

Accordingly, we reverse and remand to the District Court for consideration of the extrinsic evidence which, although presented, was not considered in determining whether Hill County and the adjoining landowners' fee interests are subject to foreclosure.

Reversed and remanded.

_____
Justice

12

We concur:

_____
Chief Justice

_____

_____
Justices

The Honorable Douglas G. Harkin,
Judge of the District Court, sitting
for Justice William E. Hunt, Sr.

13

Chief Justice J. A. Turnage specially concurring:

I concur with the result reached by the majority, remanding this case to allow the District Court to consider extrinsic evidence concerning the parties' intent in entering the "Subordination Agreement." I am confident, from the evidence in the record thus far concerning the circumstances surrounding execution of the "Subordination Agreement," that the parties intended to create a lien under the terms of the mortgage on the fee title to the property on which the shopping center is located.

_____
Chief Justice

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that the subordination agreement is ambiguous and that its interpretation requires extrinsic evidence. I conclude that the plain terms of the agreement did nothing more than subordinate Hill County's fee interest to Travelers' right to foreclose on the lessee's leasehold interest.

Furthermore, in the event of an ambiguity in the subordination agreement, Montana's statutory and case law require that uncertainties be resolved against the drafter of the document, which in this case was Travelers Insurance Company. For these reasons, I would reverse the judgment of the District Court and enter summary judgment for Hill County.

The subordination agreement which was executed by Hill County in favor of Travelers Insurance Company acknowledged that Hill County owned the subject property in fee simple absolute, but had leased it on August 29, 1975, to M & M Enterprises, a Montana partnership. The agreement then acknowledged that M & M had mortgaged its lessee's interest in that property as security for a loan given by Travelers. Therefore, in the event that M & M defaulted from its obligation to repay that loan, Travelers had a right to foreclose on M & M's leasehold interest.

M & M's leasehold interest gave it the right to occupy land owned by Hill County in fee simple for a period of fifty years from October 1, 1975, and build a shopping center on that land. It also obligated M & M to pay rent to Hill County in the amount of $20,360

15

annually after completion of the shopping center. There were various other terms and conditions set forth in the written lease agreement. However, the leasehold interest was limited to the rights provided for in that agreement and did not include a fee simple interest in the property owned by Hill County.

As the lessor and owner of the real estate on which the shopping center was to be built, Hill County also had rights pursuant to the lease agreement. It had the right to receive rent, and it had the right to retake possession of the property in the event that the rent was not paid.

By the written subordination agreement, Hill County agreed, in consideration of Travelers' loan to M & M, to

> [subordinate] all of its right, title and interest in and to said real property to the lien of said mortgage and agrees that said mortgage shall continue to be a first lien upon said property prior and superior in right to any right, title and interest of the undersigned in and to said real property.

In other words, Hill County simply agreed to defer the enforcement of its rights in the property to Travelers' enforcement of its right to foreclose on the leasehold interest. A subordination agreement is

> "an agreement by which a party having a superior right of some sort agrees with someone having an inferior right that, as between the two of them, the inferior right shall be treated as if it were superior."
>
> . . . .
>
> . . . By executing a lien subordination agreement, the subordinating party agrees to demote the priority of its lien to that of another secured creditor, thereby delaying its recourse to the identified collateral until the other party's secured claim has been satisfied.

16

*In re Lantana Motel* (Bankr. S.D. Ohio 1990), 124 B.R. 252, 255, 256 (citation omitted).

However, while the subordination agreement required that Hill County defer its interest in the property during the term of the leasehold, it could not have, by its plain terms, given Travelers any greater interest in the property than it had pursuant to its mortgage agreement with M & M. That conclusion is compelled by the fact that Travelers only had an interest in the leasehold and Hill County only agreed to defer to Travelers' leasehold interest. Travelers had no interest in the fee simple estate, and none was created by the subordination agreement.

A similar issue was presented to the United States District Court for the District of Idaho in *Old Stone Capital Corp. v. John Hoene Implement Corp.* (D. Idaho 1986), 647 F. Supp. 916.

In that case, John Hoene Implement Corporation (JHI) leased property from Davis. JHI then gave a lending institution a deed of trust on its leasehold interest to secure an operating loan. Davis, as an inducement for the loan, agreed to subordinate her interest in the property to the lending institution's security interest in the leasehold. JHI defaulted and the lending institution sought to foreclose on Davis's fee simple interest in the property. The Federal District Court for the District of Idaho first concluded that the subordination agreement could not create a mortgage interest in Davis's fee simple estate. *Old Stone*, 647 F. Supp. at 919. However, in language relevant to the issue in

17

this case, it also concluded that since the lender never had an interest in the fee title to Davis's property, it could not acquire that kind of interest simply by virtue of the fact that Davis subordinated her fee interest, and whatever rights were attendant to it, to the lender's mortgage interest in the leasehold. The court held as follows:

> In summary, the nature of a subordination is such that the beneficiary of the subordination must have a competing interest which, after the subordination, becomes senior to that which, before the subordination, was the senior interest. In this case, Old Stone [the lending institution] never had an interest in the fee of Davis's property, but only pursuant to the leasehold mortgage a junior interest in the leasehold. After the subordination, Old Stone's interest in the leasehold became superior to Davis's interest in the leasehold. By its very nature, the vehicle of subordination could not be used to grant Old Stone an interest in the fee. In order to have an interest in Davis's fee estate, a mortgage or deed of trust must have been executed. No such instrument was executed. Further, the subordination agreement cannot be elevated to the position of a mortgage or deed of trust since it lacks the formalities of such required under Idaho law. The subordination agreement could not, as a matter of law, grant any interest in the fee, upon which foreclosure could be had, to Old Stone. Foreclosure is only possible on the deed of trust affecting the leasehold.

*Old Stone*, 647 F. Supp. at 919.

Likewise in this case, Travelers had no interest in Hill County's fee title based on its mortgage agreement with Hill County's lessee. Therefore, when Hill County agreed to defer to Travelers' mortgage interest, it agreed to do nothing more than waive its rights as lessor during the period of the lease agreement so that Travelers could freely enforce its security interest in the leasehold without competition from Hill County based on its

18

superior interest. These facts are clear from the plain terms of the subordination agreement and require reversal of the District Court and entry of summary judgment for Hill County.

However, even if, as the majority concludes, "[t]he language of the agreements is ambiguous," the result must be the same. Travelers prepared the documents, and if it intended to create a mortgage interest in Hill County's property, it was capable of doing so by clear language. The fact that it was aware of how to create a mortgage interest is evident from the mortgage document that it drafted and had executed by M & M to create a mortgage interest in M & M's leasehold estate.

Section 28-3-206, MCA, provides:

In cases of uncertainty not removed by parts 1 through 5 of this chapter, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party, except that in the case of a contract between a public officer or body, as such, and a private party, it is presumed that all uncertainty was caused by the private party.

We have also repeatedly held that ambiguous contracts should be resolved against that party that drafted the contract. *See, e.g., Topco, Inc. v. State* (1996), 275 Mont. 352, 360, 912 P.2d 805, 810; *Mueske v. Piper, Jaffray & Hopwood, Inc.* (1993), 260 Mont. 207, 216, 859 P.2d 444, 449-50; *St. Paul Fire & Marine Ins. Co. v. Cumiskey* (1983), 204 Mont. 350, 363, 665 P.2d 223, 229.

The majority opinion does not address the standard rule regarding ambiguous contracts. However, when that rule is applied, it clearly requires construing the subordination agreement in favor

19

of Hill County and against Travelers' implausible suggestion that the subordination agreement was not merely a subordination agreement, but was in fact a mortgage agreement, even though it makes no mention of a mortgage nor includes any language of conveyance.

For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court and enter summary judgment in favor of Hill County on the issue of whether Travelers has a mortgage interest in Hill County's property.

_____
Justice

Justice James C. Nelson joins in the foregoing dissenting opinion.

_____
Justice

20

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 95-152

_____

TRAVELERS INSURANCE COMPANY, a )
Connecticut corporation, )
)
)
)
Plaintiff and Respondent, )
v. )           O R D E R
)
HOLIDAY VILLAGE SHOPPING CENTER )
LIMITED PARTNERSHIP, a Montana )
limited partnership; SIX SIXTY )
SEVEN, INC.; HILL COUNTY, MONTANA; )
ROBERT L. BROWN; ROBERT W. RECTOR; )
RICHARD F. BOHN; JACK OLIVER; CLARKE )
STREEPER and OBS PARTNERSHIP, )
)
Defendants and Appellants. )



FILED

JAN 3 0 1997

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

_____

On January 3, 1997, appellants Hill County, Brown, Rector, Oliver, Bohn, Streeper and OBS filed with this Court a petition for rehearing in the above-entitled matter; respondent, Travelers Insurance Company filed its objections on January 13, 1997.

Having considered the petition and objections,

IT IS ORDERED:

1.    The following stricken language is hereby deleted from this Court's December 16, 1996, Opinion (slip op. at page 3, second line from the top):

Travelers.    These agreements were executed on M & M's behalf so that Travelers would advance the funds . . . .

In all other respects, the Opinion shall remain the same.

2.    The petition for rehearing is DENIED.

3.    The Clerk is directed to mail a true copy hereof to

1

counsel of record for the respective parties, to State Reporter

Publishing Company and West Publishing Company.

DATED this 30th day of January, 1997.

_____
Chief Justice

_____

_____

_____

_____
Justices


The Honorable Douglas G. Harkin, District Court Judge, sitting for
Justice William E. Hunt, Sr., would also deny the Petition for
Rehearing.

2