JUSTICE TRIEWEILER
delivered the Opinion of the Court.
The Defendant, Earl Dallas Ford, was charged by information filed in the District Court of the Fourth Judicial District in Missoula County, with the offense of sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA. Following a trial by jury, Ford was convicted and sentenced. He appeals the District Court’s judgment. We affirm the District Court.
The issues on appeal are:
1. Was there sufficient evidence to support the jury verdict?
2. Did the District Court err when it denied Ford’s motion for a mistrial?
3. Did the District Court err when it overruled Ford’s objections to questions asked during his cross-examination, and to statements made during the State’s closing argument regarding his sexual preference?
4. Did the sentence imposed by the District Court violate Ford’s rights pursuant to Article II, Section 22, of the Montana Constitution?
*356 FACTUAL BACKGROUND
Earl Dallas Ford was charged with the offense of sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA. The information alleged that Ford drugged and incapacitated Brad Stahl, and then engaged in sexual intercourse with Stahl, without Stahl’s consent. He entered a plea of not guilty.
During pretrial proceedings, the State filed a “Notice of Intent to Introduce Evidence of Other Acts,” pursuant to State v. Just (1979), 184 Mont. 262, 602 P.2d 957, and the notice requirements of § 46-13-109, MCA. The State sought to present evidence of a 1991 conviction in California for felony child molestation for which Ford was sentenced to prison for three years. The State also filed a “Notice of Intent to Seek Increased Punishment,” pursuant to the persistent felony offender statutes, §§ 46-18-501, -502, and -503, MCA.
Trial by jury commenced on October 11, 1994. The District Court granted Ford’s motion opposing the State’s “Notice of Intent to Introduce Evidence of Other Acts.” The District Court also granted the State’s motion to allow the investigating officer, Tom Lewis, to testify that, at the time of arrest, Ford admitted to raping a boy in California.
Brad Stahl, the complaining witness, testified that on July 14, 1994, after attending a barbecue in East Missoula, he slept on the living room couch in Earl Ford’s trailer. He was not quite asleep when he felt something placed over his mouth, and was then unable to breathe. When he regained consciousness, he realized that someone’s penis was in his anus. Although awake, he was disoriented and unable to move. When finally able to move, he went into the bathroom and discovered that he was not wearing any clothes. He walked back into the living room, found his clothes under the couch, and put them on. Ford then sat down next to him on the couch. Brad attempted to leave the trailer, but Ford rubbed baby-oil on his back, and tried to convince him to lie down and go back to sleep. Again, Brad attempted to leave, but Ford pushed him into his bedroom and onto the bed. Brad exited the bedroom, and was finally able to leave the trailer. Feeling unable to drive, he slept in his truck for one hour. He then woke up, drove to his uncle’s house, and slept in his truck for three more hours.
The next day, Brad, accompanied by his cousin, Charlie, and his uncle, Kevin, confronted Ford. Ford apologized, admitted what he had done, and told Brad he was “a good man.” Brad demanded the return of his underwear, which Ford retrieved from his bedroom.
*357 Several days later, Brad went to the police and to a doctor. Although Ford had not ejaculated in him, Brad suffered some tearing of his anus. He told the nurse that he had been drugged, that anal intercourse had been performed upon him, that he had not consented to intercourse, and that he was angry and emotional. At the time of trial, he was seeing a counselor.
Charlie Stahl confirmed that on July 14, 1994, Brad was not intoxicated. He described the confrontation between Ford and Brad on July 15, 1994, noting that Ford apologized repeatedly. He also recounted Brad’s emotional distress.
Likewise, Kevin Stahl confirmed that Brad was not intoxicated, and provided a similar description of the confrontation between Ford and Brad. Furthermore, he testified that on the morning of July 15, 1994, Kevin had found Brad asleep in his truck. As Brad exited the truck and asked for a hug, Kevin immediately knew something was wrong. The two men then drove around for an hour while Brad relayed the events of the rape. Kevin also recounted the physical and emotional pain Brad was experiencing.
Officer Tom Lewis, a deputy sheriff with the Missoula County Sheriff’s Department, was the investigating and arresting officer. Lewis testified regarding his interview with Brad, his attempts to locate Ford, and that, pursuant to a search of Ford’s trailer, he found a small bottle of Johnson’s baby oil. During his testimony, the following exchange occurred:
Q: Did you ask to search his residence?
A: Yes, I did. I asked Mr. Ford for consent to search. Prior to that, when I advised Mr. Ford that there were charges pending on violation out of another state and-
At that point, Ford objected based on the District Court’s ruling regarding evidence of other acts. After the District Court overruled his objection, Ford moved for a mistrial, which the District Court denied. The State proceeded to question Officer Lewis. No further information regarding Ford’s prior offenses was elicited. Immediately following Lewis’s testimony, the District Court issued a cautionary instruction. The jury was told to consider only the merits of the instant case and not any other factors, particularly whether Ford was wanted in any other jurisdiction.
Earl Ford testified on his own behalf, and denied having sexual intercourse with Brad Stahl. He admitted that he had rubbed baby-oil on Brad’s back, but claimed he was merely soothing Brad, who had *358 complained of a bad hangover. His apologies the next day, he alleged, were only for his grumpy behavior. During the State’s cross-examination of Ford, the following exchange occurred:
Q: It is true, is it not, that you have an interest in homosexuality?
A: Yes, it is.
MR. BECCARI (defense counsel): Your honor, I am going to object, that is so incredibly prejudicial. It is nothing I brought up in my direct examination.
THE COURT: Overruled.
Q: Would you explain that interest, please?
A: I just have an interest in men.
Q: Are you a homosexual, bisexual or what?
A: Bisexual.
Subsequently, during the State’s closing argument, the following statements were made:
THE STATE: I’m hesitant and reluctant to get into this, but I feel I have to call this to your attention. I am not gay bashing, I am not bisexual bashing, I have got better things to do. But we have got a man here—
MR. BECCARI (defense counsel): I am going to object to this in closing argument. It is not supported by any evidence, it is totally—
THE COURT: It is argumentative, it is admitted.
THE STATE: We have a man that admitted he is bisexual. That’s exactly what he is charged with doing. What he does with consent with somebody, I don’t give a rip. But Brad cares what happened to him.
The jury returned a guilty verdict, and a presentence investigation report was ordered. At the sentencing hearing, the District Court designated Ford as a persistent felony offender, pursuant to §§ 46-18-501, -502, and -503 MCA; and a dangerous offender for purposes of parole. The District Court sentenced him to 100 years, and ordered that he shall not be eligible for parole or participation in a supervised release program while serving his term.
Ford now appeals to this Court. It should be noted that his appeal is accompanied by an Anders brief, filed by the Missoula Public Defender Office, contending that there are no meritorious appealable issues in this case. We affirm the judgment of the District Court.
ISSUE 1
Was there sufficient evidence to support the jury verdict?
*359 When we review the sufficiency of the evidence supporting a jury verdict in a criminal case, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Licht (1994), 266 Mont. 123, 131, 879 P.2d 670, 675.
The Anders brief, while contending that there are no meritorious grounds for appeal, provides notice to this Court that Ford wishes to raise the following issue: That he was unfairly arrested, charged, and convicted on the word of Brad Stahl, who was lying. In essence, Ford claims that there was insufficient evidence to support the jury’s verdict.
The jury was presented with the conflicting testimony of Brad Stahl and Earl Ford. Ultimately, they decided to accept Brad’s version, and to reject Ford’s version. This is the jury’s prerogative according to the law in Montana. Section 25-7-103, MCA, provides that in a jury trial all questions of fact, with limited exceptions, are to be decided by the jury.
Our prior decisions establish that in sex offense cases the victim’s testimony need not be corroborated. State v. Gilpin (19288), 232 Mont. 56, 70, 756 P.2d 445, 453. In State v. Biehle (1992), 251 Mont. 257, 824 P.2d 268, the victim testified that the sexual contact was committed by the defendant. We held that such testimony was sufficient to sustain a guilty verdict. Biehle, 251 Mont, at 260, 824 P.2d at 271. Additionally, the jury heard the testimony of Charlie Stahl, Kevin Stahl, and Officer Lewis, and was presented with the bottle of baby oil found in Ford’s trailer.
Based on the evidence presented, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, we hold that there was sufficient evidence to support the jury’s verdict.
ISSUE 2
Did the District Court err when it denied Ford’s motion for a mistrial?
When we review a District Court’s ruling on a motion for a mistrial, the standard of review is whether there is clear and convincing evidence that the court’s ruling is erroneous. State v. Greytak (1993), 262 Mont. 401, 404, 865 P.2d 1096, 1098. Furthermore, a mistrial is appropriate when there is a demonstration of manifest necessity, or when the defendant has been denied a fair and impartial *360 trial. United States v. Perez (1824), 22 U.S. 579, 580, 6 L. Ed 165; (9 Wheat.) State v. Brush (1987), 228 Mont. 247, 252-53, 741 P.2d 1333, 1336; State v. Doney (1981), 194 Mont. 22, 32-33, 636 P.2d 1377, 1383. This Court has invoked the manifest necessity doctrine twenty-two times since it was first employed in State v. Close (1981), 191 Mont. 229, 623 P.2d 940. Unfortunately, we have not remained consistent in the fifteen years since Close, and we now have a myriad of different standards by which to review the denial of a mistrial. Today, we clarify the standard and announce a prospective rule. We hold that a motion for a mistrial will be granted when there is either a demonstration of manifest necessity, or where the defendant has been denied a fair and impartial trial.
At trial, Officer Lewis testified:
I asked Mr. Ford for consent to search. Prior to that, when I advised Mr. Ford that there were charges pending on violation out of another state and—
(emphasis added). Ford’s objection to this testimony and subsequent motion for a mistrial were both denied. On appeal, Ford claims that Officer Lewis’s statement constituted inadmissible evidence of other crimes and “ensured the jury would convict [Ford] based on who he was rather than what he did.” Therefore, he contends, the District Court committed reversible error when it denied his motion for a mistrial.
We conclude that there was not a manifest necessity for a mistrial, and that Ford was not denied a fair and impartial trial. First, the statement had only a slight prejudicial effect, if any. Officer Lewis did not testify about any prior crimes or convictions. Rather, he mentioned that charges from another jurisdiction were pending, and that they were one of the reasons he was attempting to locate Ford. He did not speculate about the nature of those other charges.
Second, any prejudicial effect the statement might have had was cured by the following cautionary instruction which was given by the District Court:
Ladies and gentlemen, you have just heard the testimony of Detective Lewis concerning his attempts to locate the Defendant. The only thing you are to consider is the merits of this case alone. You are not to consider any other factors, particularly whether any other jurisdiction wanted him or anything of that nature. And you are not to speculate at all from any of that information. You are to confine yourself solely to the aspect of guilt or innocence of the Defendant on these particular charges and do no speculation as to *361 any other matters. Agreed? Does anybody have any problem with that concept?
We have held that “[a]n error in the admission of evidence may be cured if the jury is admonished to disregard it.” State v. Conrad (1990), 241 Mont. 1, 9, 785 P.2d 185, 190. In Conrad we went on to conclude that, in view of the trial court’s admonishment of the jury after evidence of the defendant’s other charged misconduct came in during cross-examination, the State’s reference to prior convictions did not constitute reversible error. Conrad, 241 Mont, at 9, 785 P.2d at 190.
We conclude that Officer Lewis’s statement could have had little, if any, effect on the jury’s decision, and that Ford fails to meet his burden of showing clear and convincing evidence of error by the District Court. We agree with the District Court that the circumstances of this case did not warrant a mistrial, and conclude that Ford received a fair and impartial trial. Accordingly, we hold that the District Court did not err when it denied Ford’s motion for a mistrial.
ISSUE 3
Did the District Court err when it overruled Ford’s objections to questions asked during his cross-examination, and to statements made during the State’s closing argument regarding his sexual preference?
When we review an evidentiary ruling, the standard of review is whether the district court abused its discretion. State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263. The district court is in the best position to rule on the admissibility of evidence at trial. It has the opportunity to evaluate the contextual relevance of proffered evidence, and the impact such evidence will have on the jury. Rulings regarding the admissibility of evidence are left to the sound discretion of the trial court, and will not be overturned on appeal absent a showing of manifest abuse of discretion. Greytak, 262 Mont, at 405, 865 P.2d at 1098. Thus, our deferential standard of review gives the district court “great discretion” in ruling on the admissibility of evidence. State v. Larson (1992), 255 Mont. 451, 454, 843 P.2d 777, 779.
During the State’s cross-examination of Ford, the following exchange occurred:
Q: It is true, is it not, that you have an interest in homosexuality?
A: Yes, it is.
*362 MR. BECCARI (defense counsel): Your honor, I am going to object, that is so incredibly prejudicial. It is nothing I brought up in my direct examination.
THE COURT: Overruled.
Q: Would you explain that interest, please?
A: I just have an interest in men.
Q: Are you a homosexual, bisexual or what?
A: Bisexual.
Subsequently, during the State’s closing argument, the following statements were made:
THE STATE: I’m hesitant and reluctant to get into this, but I feel I have to call this to your attention. I am not gay bashing, I am not bisexual bashing, I have got better things to do. But we have got a man here—
MR. BECCARI (defense counsel): I am going to object to this in closing argument. It is not supported by any evidence, it is totally— THE COURT: It is argumentative, it is admitted.
THE STATE: We have a man that admitted he is bisexual. That’s exactly what he is charged with doing. What he does with consent with somebody, I don’t give a rip. But Brad cares what happened to him.
Ford asserts that the State’s questions during his cross-examination and statements during its closing argument regarding his sexual preference were so prejudicial that he was deprived of a fair trial.
We hold that, based on the facts of this case, the probative value of the State’s evidence was not substantially outweighed by the danger of unfair prejudice. See Rule 403, M.R.Evid. By admitting this evidence, the District Court did not abuse its discretion, and did not commit reversible error.
There is, unquestionably, the potential for prejudice in this situation. There will be, on virtually every jury, people who would find the lifestyle and sexual preferences of a homosexual or bisexual person offensive. While everyone should be offended by the crime Ford was found to have committed, our criminal justice system must take the necessary precautions to assure that people are convicted based on evidence of guilt, and not on the basis of some inflammatory personal trait. Therefore, we caution prosecutors and district courts not to assume, based on this opinion, that evidence of a defendant’s sexual preference would be admissible under most circumstances. In *363 this case, however, we conclude that Ford’s rights were adequately safeguarded, and that he was not convicted because he is a bisexual.
Despite the potential for prejudice, Ford’s sexual preference was relevant to, and probative of an essential issue in this case. Ford was charged with sexual intercourse without consent, committed upon a person of the same gender. The State’s questions on cross-examination, and statements during closing argument, were probative of whether Ford fit the profile of someone who would commit the act for which he was accused. This is especially true given the fact that, because of the nature of the crime, not all members of society would fit the perpetrator’s profile. Furthermore, we have recognized that the State, when making its closing argument, has the right to comment upon the evidence and suggest to the jury the inferences to be drawn therefrom. See State v. Campbell (1990), 241 Mont. 323, 329, 787 P.2d 329, 333.
Finally, it has not been shown that the State’s questions and statements prejudiced Ford’s substantial rights.
Before rendering its verdict, the jury was presented with the following evidence: the baby oil bottle found in Ford’s trailer; the admission of guilt and expressions of remorse made by Ford to the victim; Ford’s unlikely explanation for his expressions of remorse; and the testimony of Charlie Stahl, Kevin Stahl, Officer Lewis, and, most significantly, Brad Stahl. The possible impact of the jury’s knowledge that Ford was bisexual pales by comparison to the likely impact of the overwhelming evidence of his guilt.
Accordingly, we hold that the District Court did not abuse its discretion when it overruled Ford’s objections to the State’s questions on cross-examination and statements during its closing argument.
ISSUE 4
Did the sentence imposed by the District Court violate Ford’s rights pursuant to Article II, Section 22, of the Montana Constitution?
It is well established that our review of a sentence will be limited to questions of legality. State v. Graves (1995), 272 Mont. 451, 463, 901 P.2d 549, 557; State v. Hurlbert (1988), 232 Mont. 115, 123, 756 P.2d 1110, 1115. We will not review a sentence for mere inequity; the proper forum for a review of that nature is the Sentence Review Division. State v. Almanza (1987), 229 Mont. 383, 386, 746 P.2d 1089, 1090-91.
Ford asserts that his sentence of 100 years, without parole eligibility, violates the excessive sanction provision of Article II, Section *364 22, of the Montana Constitution. That provision states, “[e]xcessive bail shall not be required, or excessive fines imposed, or cruel and unusual punishments inflicted.” He claims that the harshness of his sentence is unconstitutionally disproportionate to the gravity of his crime.
Before sentencing Ford, the District Court found that he is a persistent felony offender, pursuant to §§ 46-18-501, -502, and -503, MCA. Further, during pretrial proceedings, the State filed a “Notice of Intent to Seek Increased Punishment,” pursuant to §§ 46-18-501, -502, and -503, MCA. Based on those statutes and the presentence investigation report, the District Court sentenced Ford to prison for a term of 100 years, designated him a dangerous offender, and declared him ineligible for parole.
A sentence is not illegal when it is within the parameters provided by statute. State v. Henry (1995), 271 Mont. 491, 497-98, 898 P.2d 1195, 1199. Under § 46-18-502(1), MCA, “a persistent felony offender shall be imprisoned in the state prison for a term of not less than 5 years or more than 100 years.” Ford’s sentence clearly falls within the parameters of § 46-18-502, MCA.
“Trial judges are granted broad discretion to determine the appropriate punishment.” State v. Hembd (1992), 254 Mont. 407, 411, 838 P.2d 412, 415. In exercising its discretion and sentencing Ford, the District Court considered the following factors: the facts of the instant crime; his prior criminal history of sexually preying on young boys; previous attempts by professional therapists and state officials to treat his problems; his apparent unwillingness to accept the provided treatment; and his predatory nature. All of the aforementioned factors are appropriate considerations when sentencing a defendant.
Accordingly, we hold that the District Court’s sentence was legally imposed and did not violate Ford’s rights pursuant to Article II, Section 22, of the Montana Constitution.
Our decision today does not affect any right to relief Ford may have from the Sentence Review Division.
The judgment of the District Court is affirmed.
CHIEF JUSTICE TURNAGE, JUSTICES HUNT and ERDMANN concur.